**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**



FILED ✓ LODGED
RECEIVED COPY

JAN 1 4 2026

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

**BRIGITTE KEENE,**

**Plaintiff, Pro Se,**



CV-26-225-PHX-JJT

**v.**

**CITY OF SCOTTSDALE,**

**a municipal corporation,**

**Defendant.**

Case No. _____

Assigned Judge: _____

**VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY**

**RELIEF (DEMAND FOR JURY TRIAL)**

## I. JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and related federal statutes.

2.  This Court has jurisdiction to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and to award all appropriate relief authorized by law.

3.  Plaintiff's claims arise under the First, Fourth, and Fourteenth Amendments to the United States Constitution and under federal statutes providing for the protection of civil rights, as alleged in the Counts set forth below.

4.  Defendant City of Scottsdale is a municipal corporation organized under the laws of the State of Arizona and is a "person" subject to suit under 42 U.S.C. § 1983 for constitutional deprivations caused by its policies, customs, and practices.

5.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant City of Scottsdale is located within this district and because a substantial part of the events or omissions giving rise to the claims alleged occurred within the District of Arizona.

6.  Venue is further proper because the governmental actions, processes, and enforcement mechanisms challenged in this action were administered, implemented, or maintained within this district.

7. All jurisdictional prerequisites to the maintenance of this action have been satisfied, excused, or are not required under the governing federal statutes.

8. This Court has personal jurisdiction over Defendant City of Scottsdale because it resides in this district and because it purposefully availed itself of the privileges and protections of the laws of the United States and the State of Arizona through the conduct alleged in this action.

## II. PARTIES

9. Plaintiff is an individual who, at all times relevant to this action, was subject to and affected by the governmental actions, processes, and enforcement mechanisms administered by Defendant City of Scottsdale, as alleged in the Counts pleaded herein and incorporated by reference as applicable.

10. Defendant City of Scottsdale is a municipal corporation organized and existing under the laws of the State of Arizona and is a public entity subject to suit under 42 U.S.C. § 1983 and other applicable federal statutes for constitutional and statutory deprivations caused by its policies, customs, practices, and acts or omissions.

11. Defendant City of Scottsdale acted at all relevant times through its departments, divisions, offices, agencies, boards, commissions, contractors, and instrumentalities, including but not limited to its police department, administrative units, supervisory bodies, and affiliated personnel responsible for law enforcement, investigation, protective

services, record handling, intake, review, and related governmental functions referenced in the Counts alleged herein.

12. At all relevant times, Defendant City of Scottsdale exercised final authority over the policies, customs, practices, training, supervision, ratification, and administrative structures governing the conduct challenged in this action and is therefore the proper Defendant for the municipal liability claims asserted herein.

13. The acts and omissions alleged in this Complaint were undertaken by officers, employees, agents, contractors, and officials of Defendant City of Scottsdale, acting within the scope of their employment or authority and under color of state law, such that their conduct is attributable to the City as alleged herein.

14. Defendant City of Scottsdale is liable for the acts and omissions alleged herein to the extent such conduct was undertaken pursuant to official policy, longstanding custom or practice, failure to train or supervise, or ratification by officials with final policymaking authority, as alleged in the Counts pleaded herein and incorporated by reference as applicable.

15. Defendant City of Scottsdale includes, for purposes of this action, all present and former officers, employees, agents, supervisors, policymakers, and affiliated actors whose identities are presently unknown to Plaintiff and who participated in, authorized, implemented, enforced, reviewed, ratified, or failed to correct the conduct alleged.

16. Accordingly, Plaintiff names as Defendants John Doe Defendants 1 through 50 and Jane Doe Defendants 1 through 50, inclusive, who are officers, employees, agents, contractors, supervisors, policymakers, or other persons acting under color of state law on behalf of Defendant City of Scottsdale, whose true names and capacities are presently unknown, and who will be substituted when ascertained.

17. At all relevant times, each Doe Defendant acted individually and in concert with others, within the scope of their authority, and under color of state law, and their acts and omissions are attributable to Defendant City of Scottsdale as alleged herein.

18. Whenever reference is made in this Complaint to Defendant City of Scottsdale, Defendant City, the City, Defendant, Scottsdale, such reference shall be deemed to include Defendant City of Scottsdale and all of its departments, divisions, agencies, officers, employees, agents, contractors, supervisors, policymakers, and Doe Defendants acting under color of state law, unless otherwise expressly stated.

19. Plaintiff is informed and believes, and on that basis alleges, that at all times relevant, each Defendant and Doe Defendant was acting within the scope of their duties and authority, and that their conduct was undertaken in furtherance of the policies, customs, practices, or administrative frameworks of Defendant City of Scottsdale, as alleged in the Counts pleaded herein and incorporated by reference as applicable.

### III. FACTUAL ALLEGATIONS

20. Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, as evidenced by Defendants' actual notice of Plaintiff's disability-related access needs and Defendants' treatment of Plaintiff as disabled for purposes of intake, routing, and administrative handling.

21. This action is a civil rights action arising under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and related federal statutes, as alleged in the Counts set forth herein.

22. Plaintiff brings this action to address systemic conduct by Defendant City of Scottsdale and associated actors, acting under color of state law, that resulted in the deprivation of rights secured by the Constitution and laws of the United States, as alleged in the Counts pleaded herein and incorporated by reference as applicable.

23. The conduct challenged in this action arises from the administration, operation, and enforcement of law enforcement, investigative, protective, and related governmental functions, as described in the Counts incorporated herein.

24. Plaintiff does not seek to challenge discretionary policy judgments as such, nor to assert an entitlement to any particular enforcement outcome. Rather, Plaintiff challenges the maintenance and operation of policies, customs, practices, and procedures that allegedly resulted in constitutional and statutory violations, as set forth in the Counts herein.

25. At all relevant times, Defendant City of Scottsdale acted through its departments, officers, employees, agents, and officials, including individuals with final policymaking authority, whose acts and omissions are attributable to the City as alleged in the Monell counts pleaded herein.

26. At all relevant times, Defendant City of Scottsdale maintained written policies, procedures, and training materials governing the handling, assessment, investigation, and disposition of reports, complaints, and incidents subject to municipal authority, including the enforcement of applicable law and the exercise of official powers affecting individual rights and legal status.

27. These policies and procedures governed how City personnel were instructed to perform official functions across municipal systems during the events described herein. Plaintiff pleads these facts solely to establish context and relevance concerning the existence and scope of municipal policies and training applicable to the conduct at issue.

28. At all relevant times, the City of Scottsdale operated internal processes for identifying, recording, and managing impeachment-relevant credibility information concerning sworn police officers in connection with criminal proceedings, including information bearing on officer truthfulness, reliability, or prior misconduct. Such processes were used by the City in evaluating officer participation in cases where sworn testimony could affect criminal liability or liberty interests.

29. In contrast, during the events giving rise to this action, the City of Scottsdale maintained no comparable intake, review, or response mechanism for receiving or evaluating

credibility-related information concerning officers acting as affiants or witnesses in involuntary civil detention proceedings. Despite Plaintiff's attempts to convey credibility-related concerns regarding the officers involved, no evaluative response, referral, or corrective process occurred before the initiation or continuation of the detention proceedings, which proceeded based on sworn officer representations and resulted in Plaintiff's seizure and detention.

30. After Plaintiff, who was the named victim in the underlying police reports and related matters, submitted written complaints to supervisory personnel concerning the handling of her cases, an officer assigned to those matters contacted Plaintiff and referenced inpatient mental-health placement or evaluation as a potential response pathway in connection with those matters.

31. Shortly thereafter, Plaintiff was subjected to an unannounced at home mental health screening visit that was presented as voluntary and non-consequential, without disclosure that the visit formed part of a process that could result in involuntary detention or other deprivation of liberty.

32. Plaintiff was not provided advance notice that any involuntary mental-health petition had been initiated or was being sought at the time.

33. In the days following Plaintiff's submission of a written ADA discrimination complaint and accommodation request to the City of Scottsdale ADA Coordinator, Plaintiff received a telephone call informing her that police officers were present at her residence and that an order authorizing involuntary inpatient detention had been issued. Plaintiff

was told she was required to accompany the officers pursuant to that order. Plaintiff complied under protest and was seized shortly thereafter.

34. At all relevant times, Defendants possessed actual notice of Plaintiff's disability and disability-related access needs through Plaintiff's direct communications, requests for reasonable accommodations, and repeated engagement with Defendants' law-enforcement and administrative processes.

35. Such notice was operational, contemporaneous, and embedded within Defendants' own intake, review, escalation, and record-handling systems, and therefore attributable to Defendants for purposes of policy-based decision-making, post-notice obligations, and deliberate indifference as alleged herein.

36. The material facts concerning Defendants' intake, routing, escalation, and record-handling procedures, and Plaintiff's documented interactions with those systems, are reflected in records created and maintained by Defendants and do not depend on disputed testimonial recollection.

37. Plaintiff's allegations concerning Defendants' handling of reports, records, and administrative processes are based on information contained within, derived from, or reasonably inferred from state-controlled records and procedures to which Plaintiff was subject.

38. To the extent such records are incomplete, inconsistent, or unavailable, those conditions arise from Defendants' control over the creation, maintenance, and preservation of such materials, rather than from Plaintiff's access to or custody of them.

39. During the relevant period, the abuser repeatedly stated to Plaintiff that members of his family or close associates possessed connections within law enforcement or related institutions, and that, as a result, Plaintiff would not receive protection or redress through official channels.

40. Plaintiff pleads these statements solely as representations made to her, without alleging their truth or falsity, and alleges that such representations materially influenced her fear, reporting decisions, and ability to meaningfully engage with municipal and institutional processes as a crime victim.

41. Plaintiff further pleads that, following her release from the detention facility, she became aware of publicly available information indicating that a family member of the alleged abuser maintained a professional and commercial relationship with the facility to which Plaintiff had been detained.

42. Plaintiff does not allege, at this stage, that this relationship affected any particular decision or outcome. These facts are pleaded solely to provide contextual background relevant to Plaintiff's understanding of, and interactions with, governmental and institutional systems during the period at issue.

43. At all relevant times, the acts and omissions alleged were undertaken within the scope of governmental authority and constituted action under color of state law.

44. At the time of the pre-petition screening process referenced in the Counts herein, Plaintiff was not informed that any involuntary petition or detention order had been initiated or sought.

45. The individual who came to Plaintiff's residence in connection with that screening identified himself as working with the Scottsdale Police Department and described the visit as a voluntary mental health check, citing concern by the Scottsdale Police Department.

46. Plaintiff pleads these statements solely as representations of official affiliation and purpose made to her at the time, without pleading their truth or falsity, and solely to establish the state-linked character and operational integration of the pathway described herein.

47. The factual allegations supporting each Count are incorporated into this Section by reference solely for purposes of providing a unified and organized framework for the claims asserted, without expanding or altering the substance of those allegations.

48. All allegations in this Section are pleaded in good faith and are intended to provide fair notice of the nature of the claims asserted and the grounds upon which they rest, consistent with Rule 8 of the Federal Rules of Civil Procedure.

49. The mandatory duties referenced herein arose upon satisfaction of specified factual predicates defined by statute, policy, or binding operational directives governing Defendants' conduct.

50. Plaintiff alleges that once those predicates were met, Defendants were obligated to proceed through prescribed procedural pathways or to articulate and document any lawful basis for deviation, rather than proceeding in a manner inconsistent with those requirements through ad hoc or undocumented decision-making.

51. The stigmatizing classifications alleged herein were not merely reputational but were operationally deployed within Defendants' state-controlled processes to influence eligibility, routing, access, and treatment. Those classifications carried concrete procedural consequences that altered Plaintiff's legal status, access to protection, and exposure to coercive state action, independent of any subjective reputational effect.

52. Each of the foregoing deprivations arose not from isolated error or discretionary disagreement, but from the predictable operation of Defendants' policies, customs, practices, and methods of administration after notice. The harms alleged were foreseeable consequences of Defendants' continued reliance on unmodified procedures, disability-impacted classifications, and coercive administrative pathways, and would not have occurred absent Defendants' post-notice decisions and omissions as alleged herein.

53. Plaintiff is an individual who, at all times relevant to the Counts alleged herein, was subject to and affected by the governmental actions, processes, and enforcement mechanisms administered by Defendant City of Scottsdale, as alleged in the Counts pleaded herein and incorporated by reference as applicable.

54. Plaintiff was entitled to the protections of the Constitution and laws of the United States in connection with the governmental conduct alleged, including protections arising under the First, Fourth, and Fourteenth Amendments, as pleaded in the Counts herein.

55. Defendant City of Scottsdale is a municipal corporation organized under the laws of the State of Arizona and is a public entity subject to suit under 42 U.S.C. § 1983 for

constitutional deprivations caused by its policies, customs, and practices, as alleged in the Monell counts set forth herein.

56. Liability under the claims asserted turns on whether Defendants' procedures and methods of administration operated to deny required access and protections after notice. Where such operation is established, liability follows regardless of asserted justifications or subjective intent.

57. Defendant City of Scottsdale receives federal financial assistance within the meaning of Section 504 of the Rehabilitation Act through federally funded programs, grants, and cooperative funding mechanisms supporting law-enforcement, emergency response, and related public services, and at all relevant times operated programs or activities subject to Section 504's nondiscrimination requirements.

58. At all relevant times, Defendant City of Scottsdale received federal financial assistance for law-enforcement, emergency response, and related public-safety programs through grants, cooperative funding mechanisms, and federally supported initiatives, bringing those programs within the scope of Section 504.

59. At all relevant times, Defendant City of Scottsdale exercised governmental authority through its police department and other municipal components responsible for law enforcement, investigation, protective services, and related administrative functions referenced in the Counts herein.

60. The individual actors whose conduct is described in these Counts acted in their official capacities, within the scope of their employment, and under color of state law, such that their acts and omissions are attributable to Defendant City of Scottsdale as alleged herein.

61. Defendant City of Scottsdale is liable for the acts and omissions alleged herein to the extent such conduct was undertaken pursuant to official policy, longstanding custom or practice, failure to train or supervise, or ratification by officials with final policymaking authority, as alleged in the Counts pleaded herein and incorporated by reference as applicable.

62. As alleged in the Counts pleaded herein, Defendant City of Scottsdale, including its officers, supervisors, and policymakers, had actual or constructive notice of the conditions, practices, and actions giving rise to the constitutional and statutory violations alleged herein.

63. Such notice arose through official reports, administrative records, investigative materials, petitions, internal review processes, and other governmental mechanisms referenced in the Counts herein, which documented the conduct at issue and its impact on Plaintiff.

64. The notice alleged herein was sufficient to inform Defendant City of Scottsdale that its actions and omissions posed a substantial risk of constitutional injury, deprivation of protected rights, and unlawful differential treatment, as pleaded in the Counts herein.

65. Despite this notice, Defendant City of Scottsdale, through its authorized decisionmakers and supervisory personnel, failed to take timely or adequate corrective action to prevent the continuation or recurrence of the challenged conduct, as alleged herein.

Verified Complaint for Declaratory Injunctive and Monetary Relief

66. Defendant City of Scottsdale's failure to act following notice was not inadvertent, isolated, or the result of mere negligence, but occurred in circumstances where corrective authority existed and remained unexercised following notice, as alleged in the counts herein.

67. The post-notice conduct and inaction of Defendant City of Scottsdale, as pleaded herein, contributed directly to the continuation of the alleged violations and forms part of the basis for the deliberate indifference, ratification, and policy-based claims asserted in this action.

68. As alleged in the Counts pleaded herein and incorporated by reference as applicable, the claims asserted do not arise from disagreement with discretionary policy judgments, but from the failure to adhere to mandatory, non-discretionary, or procedurally constrained legal requirements governing law enforcement and administrative conduct.

69. The mandatory duties referenced herein arose from binding statutes, regulations, and departmental policies governing enforcement and procedural handling once specified factual predicates were satisfied, and did not permit ad hoc deviation absent constitutionally adequate procedures.

70. Where the governing framework removed or limited discretion upon satisfaction of established predicates, Defendants were obligated to follow the required procedures and safeguards as pleaded, rather than substitute ad hoc judgment or informal practices.

71. Plaintiff does not allege an entitlement to any particular enforcement outcome, prosecution decision, or discretionary result, but instead alleges deprivation of the

procedural protections, safeguards, and non-discretionary pathways mandated by law and policy, as set forth in the Counts herein.

72. The violations alleged herein arise from Defendants' failure to operate the prescribed procedures as written, including failures to initiate required processes, adhere to mandatory, non-discretionary steps, or preserve the procedural integrity of enforcement and review mechanisms.

73. As pleaded, Defendants' conduct displaced required procedural frameworks with informal or non-compliant alternatives that foreclosed participation, review, or accountability, independent of any discretionary determination.

74. The procedural deprivations alleged herein occurred at the structural level of process design, implementation, and execution, and form the basis for Plaintiff's procedural due process, equal protection, and municipal liability claims asserted below.

75. As alleged in the Counts pleaded herein and incorporated by reference as applicable, Defendants employed methods of administration and internal handling practices that governed the intake, routing, review, and disposition of matters affecting Plaintiff's legal interests.

76. These methods of administration included standardized practices and operational mechanisms that controlled how reports, petitions, records, and enforcement actions were processed, reviewed, or declined, as pleaded in the Counts herein.

77. Plaintiff alleges that the challenged practices were not isolated deviations but reflected established modes of operation through which Defendants administered their responsibilities in a consistent and repeatable manner.

78. As alleged herein, these administrative practices operated to foreclose required procedural steps, limit or prevent meaningful review, and displace formal safeguards embedded in the governing frameworks.

79. These practices were implemented through specific handling decisions affecting Plaintiff's reports, protective-order violations, intake routing, charging referral, record access, and enforcement responses during the period alleged herein, including multiple incidents occurring while a valid protective order was in effect, as further detailed in the Counts herein.

80. The methods of administration alleged herein functioned to produce predictable outcomes by design, rather than through individualized or case specific assessment, as set forth in the Counts herein.

81. Plaintiff further alleges that official classifications, descriptions, or characterizations recorded or relied upon by Defendants were used operationally within state-controlled processes to influence access, routing, treatment, or eligibility for governmental protection, participation, or safeguards, thereby producing tangible procedural and liberty consequences beyond reputational harm.

82. These administrative structures and practices form part of the factual basis for Plaintiff's claims that Defendants' conduct was systemic, policy driven, and attributable to the municipal entity under the standards alleged herein.

83. As alleged in the Counts pleaded herein and incorporated by reference as applicable, Plaintiff was subjected to adverse state action through the operation of governmental processes, enforcement mechanisms, and administrative practices controlled by Defendants acting under color of state law.

84. The adverse state action alleged herein included deprivations of access, liberty, participation, protection, or procedural safeguards, as specifically described in the individual Counts, and arose from affirmative acts, omissions, or process designs attributable to Defendants.

85. The adverse state action included affirmative handling decisions that altered Plaintiff's safety position by diverting enforcement pathways, withholding accountability mechanisms, and permitting continued access by a known abuser through state-controlled processes.

86. The mechanisms through which such adverse action occurred were state controlled, including law enforcement responses, investigative handling, administrative intake and review procedures, victim services pathways, record usage, record withholding, enforcement routing, and related governmental processes identified herein.

87. Plaintiff alleges that these state-controlled mechanisms were applied in a manner that resulted in concrete deprivations affecting Plaintiff's legal interests, safety interests, and

ability to participate in governmental processes, as pleaded in the respective Counts
herein.

88. The adverse actions alleged were not private conduct, discretionary disagreements, or
abstract policy preferences, but were effectuated through the exercise of governmental
authority and the use of official processes and instruments of the state.

89. As alleged, the adverse state action described in the Counts pleaded herein constitutes
state action for purposes of federal constitutional and statutory analysis and forms the
basis for the deprivations and injuries asserted herein.

90. Plaintiff alleges that Defendants' obstruction, delay, and misrouting of records and
procedures materially impaired Plaintiff's ability to timely pursue, participate in, or
obtain review of non-frivolous legal and administrative claims, including by foreclosing
procedural opportunities and access points that cannot be retroactively restored.

91. Defendants' failure to provide communication methods that were as effective as those
used with others resulted in Plaintiff being unable to understand, respond to, or
meaningfully participate in investigative and administrative interactions affecting her
safety and legal interests.

92. As alleged throughout the Counts pleaded herein, Defendants' acts, omissions, policies,
customs, and practices were the direct and proximate cause of the deprivations and
injuries suffered by Plaintiff.

93. The causal connection alleged herein does not rest on speculative harm or attenuated
consequences, but on the foreseeable and natural operation of the governmental

processes, enforcement mechanisms, and administrative practices described in the Counts.

94. Plaintiff alleges that the challenged conduct operated as a substantial factor in bringing about the constitutional and statutory violations asserted, and that the resulting injuries would not have occurred absent Defendants' acts, omissions, or systemic practices.

95. With respect to the municipal liability claims, Plaintiff alleges that Defendants' policies, customs, practices, failures to act, and ratifications were the moving force behind the violations of Plaintiff's federally protected rights, as specifically pleaded in the Counts herein.

96. The moving force alleged herein arises from the design, implementation, and maintenance of governmental processes and practices that predictably resulted in the deprivations described, rather than from isolated error or individual misconduct divorced from municipal policy.

97. As pleaded, Defendants' conduct bears a direct causal relationship to the harms alleged, satisfying the causation requirements applicable to the constitutional and statutory claims alleged herein.

98. As alleged in the Counts pleaded herein and incorporated by reference as applicable, Plaintiff engaged in protected activity, including petitioning governmental entities, reporting alleged misconduct, requesting lawful enforcement, and seeking access to procedures and protections made available by law.

99. Plaintiff alleges that such protected activity was undertaken through official channels and in a manner contemplated and safeguarded by the governing statutory and constitutional frameworks referenced in the Counts herein.

100.   Following Plaintiff's protected activity, Defendants' acts, omissions, and practices operated to deter, burden, or discourage continued participation in governmental processes, as specifically alleged in the Counts herein.

101.   The chilling effects alleged herein arose from the operation of state-controlled mechanisms, administrative responses, and enforcement practices that treated protected activity as a basis for adverse handling, exclusion, or heightened risk of deprivation.

102.   Plaintiff alleges that, under an objective standard, the conduct described herein would deter a reasonable person from engaging in further protected activity through the same governmental channels.

103.   The chilling and deterrent effects alleged herein form part of the causal chain connecting Defendants' conduct to the injuries asserted, as alleged in the Counts pleaded herein and incorporated by reference as applicable.

104.   Plaintiff's need for effective communication arose in the context of complex, high-stakes law-enforcement and administrative processes involving safety risk, procedural rights, and escalating consequences. Defendants' failure to ensure communication methods that were as effective as those used with others materially impaired Plaintiff's ability to understand, participate in, respond to, or meaningfully engage with investigative, protective, and administrative actions affecting Plaintiff, as alleged herein.

105.    Plaintiff alleges that Defendants owed a duty to administer law enforcement services, enforcement mechanisms, and related governmental processes in an evenhanded and non-discriminatory manner, consistent with the Equal Protection Clause of the Fourteenth Amendment.

106.    The adverse actions alleged herein were not the product of neutral, individualized safety assessment, but instead arose from Defendants' reliance on disability-related characterizations, classifications, or inferences recorded or operationally used within state-controlled processes. Those disability-based inputs altered the handling, routing, and consequences imposed upon Plaintiff in ways not applied to similarly situated individuals without disabilities.

107.    The adverse handling decisions described herein occurred because disability-related classifications were operationally relied upon within Defendants' intake, routing, and record-handling systems, and would not have occurred in the absence of those classifications.

108.    Similarly situated individuals seeking law-enforcement protection under the same mandatory frameworks received enforcement, routing, and procedural treatment not afforded to Plaintiff under materially indistinguishable circumstances.

109.    As alleged across the Counts pleaded herein, Plaintiff was subjected to differential treatment in the provision, investigation, and enforcement of governmental services when compared to other similarly situated individuals.

110.    Plaintiff alleges that such differential treatment was deliberate and was not grounded in objective distinctions or neutral criteria but instead arose from the manner in which Defendants applied or declined to apply established procedures and protections.

111.    The unequal treatment alleged herein includes selective non enforcement, selective procedural handling, and disparate administrative responses, as specifically pleaded in the Counts herein.

112.    Plaintiff further alleges that the differential treatment lacked a rational basis and was not reasonably related to any legitimate governmental objective, as alleged across the Equal Protection and related Counts herein.

113.    The unequal treatment described herein constitutes a denial of equal protection of the laws and forms part of the constitutional injuries asserted in this action.

114.    Plaintiff alleges that Defendants' conduct, as described herein, implicates protections secured by the Fourth and Fourteenth Amendments to the United States Constitution.

115.    As pleaded, Defendants exercised state authority through law enforcement, administrative, and judicially cognizable mechanisms that subjected Plaintiff to governmental action within the meaning of the Fourth Amendment.

116.    Plaintiff alleges that such governmental action occurred without adherence to the procedural safeguards and neutral decision making required by the Fourteenth Amendment, as specifically set forth in the applicable Counts herein.

117.    The allegations do not challenge the existence of lawful governmental authority in the abstract, but rather the manner in which state-controlled processes were applied, administered, or invoked in connection with Plaintiff.

118.    Plaintiff further alleges that Defendants' actions and omissions exposed Plaintiff to unreasonable governmental intrusion and deprivation of protected interests without constitutionally sufficient process, as alleged across the Fourth and Fourteenth Amendment Counts herein.

119.    The Fourth and Fourteenth Amendment violations alleged herein form an integral part of the constitutional injuries asserted in this action and arise from the same course of conduct, policies, customs, and practices already pleaded.

120.    Plaintiff alleges that the constitutional violations at issue were caused by Defendant City's policies, customs, practices, and decisions attributable to the municipality itself, rather than by isolated or unauthorized acts of individual employees.

121.    As alleged herein, Defendant City maintained and enforced policies, customs, or practices that governed training, supervision, intake, review, enforcement, and administrative handling in the areas implicated by Plaintiff's claims, and those policies, customs, or practices were the moving force behind the constitutional deprivations alleged.

122.    Plaintiff further alleges that Defendant City, acting through officials with final policymaking authority, ratified the conduct described herein by approving, acquiescing in, or failing to correct known constitutional violations, as set forth in the counts herein.

123. The municipal liability alleged does not rest on a theory of respondeat superior, but on Defendant City's own acts and omissions, including its deliberate choices regarding policy, custom, training, supervision, and ratification, which directly caused the violations of Plaintiff's federally protected rights asserted in this action.

124. Plaintiff does not seek to impose liability based on disagreement with discretionary judgments or to claim entitlement to any particular enforcement outcome. The allegations set forth herein are limited to the existence and operation of policies, customs, practices, and procedures, and to the manner in which those structures are alleged to have been designed, administered, or maintained, as pleaded in the Counts herein.

125. The allegations in this Section are pleaded pursuant to Federal Rule of Civil Procedure 8(a) based on the facts and theories set forth herein and, in the Counts, pleaded herein. Nothing herein is intended, and nothing shall be construed, as an adoption, acceptance, or concession of Defendants' characterizations of their conduct, authority, policies, or discretion.

126. Plaintiff does not seek entitlement to any particular enforcement outcome, policy choice, or discretionary decision, but alleges structural and procedural deprivations as pleaded herein.

127. All allegations are asserted without waiver of any factual or legal position and with full reservation of rights under Federal Rules of Civil Procedure 12, 15, and 56.

128. Plaintiff alleges that any past, present, or future communications referencing mental health or related matters arise solely in the context of Plaintiff's status as a victim of

ongoing criminal conduct and in response to state-initiated mental health or protective

processes invoked by Defendant City of Scottsdale without Plaintiff's informed consent.

129.   Any such communications were compelled by circumstance, undertaken under protest

and duress, and directed exclusively toward contesting, clarifying, or mitigating the

effects of governmental actions imposed upon Plaintiff. They were not made to place,

and do not place, any personal medical or psychological condition at issue in this action.

130.   Plaintiff does not rely on any mental health diagnosis, treatment, or condition as an

element of any claim asserted herein. Any reference to mental health is alleged solely as

evidence of Defendants' conduct and its consequences and shall not be construed as a

voluntary theory of liability, damages, or causation.

131.   Plaintiff alleges that this action concerns solely the acts, omissions, policies, customs,

practices, and methods of administration of Defendant City of Scottsdale undertaken

under color of state law. Plaintiff's claims do not place her background, circumstances, or

private affairs at issue, and no such matters form any element of liability or relief sought.

132.   As alleged in the Counts pleaded herein, Defendants' handling of Plaintiff's reports

and related protective processes affirmatively altered Plaintiff's safety position by

permitting the abuser to remain unaccountable through state-controlled mechanisms,

despite known and escalating risk.

133.   The cumulative effect of Defendants' acts and omissions foreseeably enabled

continued access by the abuser and culminated in a strangulation assault on or about

February 3, 2025, followed by additional harm that forced Plaintiff to flee her home in or about June 2025.

134.    By the time Plaintiff filed an Internal Affairs complaint in or about February 2025, Defendants' own lethality and risk-assessment tools reflected an extremely high level of danger to Plaintiff. At that point, Defendants had recorded approximately ten separate incidents involving the same abuser, at least eight of which occurred while a valid protective order was in effect, thereby documenting escalating risk through state-generated records and assessments.

135.    Despite this documented escalation and extreme risk, Defendants affirmatively handled Plaintiff's reports through practices that diverted protective-order violations into alternative reporting and administrative pathways, rather than routing them through the required accountability and review mechanisms, and that failed to transmit multiple incidents to the prosecutor for charging consideration at the time.

136.    As a result of these state-controlled handling decisions, no complete or accurate record reflecting the abuser's repeated violations and escalating danger was presented for accountability determinations, thereby allowing continued access by the abuser and increasing Plaintiff's exposure to harm.

137.    Any information disclosed by Plaintiff at any time, whether before or after the filing of this action, occurred exclusively in Plaintiff's capacity as a victim of crimes and governmental conduct and for the limited purpose of seeking protection, access, or

remediation through state-controlled processes. Such disclosures do not constitute, and were not intended to constitute, a waiver of privacy, confidentiality, or any legal right.

138.    Plaintiff further alleges that, as a pro se litigant and an individual entitled to protection under applicable disability access frameworks, no waiver of rights may be implied, inferred, or deemed to arise from silence, omission, partial disclosure, procedural complexity, or language embedded in documents not clearly presented as a waiver.

139.    Any waiver of rights must be explicit, narrowly defined, set forth in plain language, and knowingly executed by Plaintiff in writing after an opportunity to review and understand its scope. Plaintiff expressly revokes and disclaims any actual or implied waiver not meeting these requirements.

140.    Absent such an express and informed written waiver, Plaintiff retains all rights and objections, past, present, and future, and no conduct, communication, silence, compliance, or participation shall be construed as a waiver or consent otherwise.

141.    Plaintiff alleges that this action is limited to Defendants' acts, omissions, policies, customs, practices, and methods of administration undertaken under color of state law, and that no other matters are relevant to the claims or defenses asserted. Information disclosed by Plaintiff at any time in connection with seeking protection, access, accommodations, or remediation through state-controlled processes was provided solely in that capacity and for that limited purpose and does not render such information relevant or discoverable in this action. Plaintiff does not place any background,

circumstances, or private affairs at issue, and such matters are not proportional to the

needs of the case under the Federal Rules of Civil Procedure.

142.    Plaintiff expressly objects to any attempt to seek discovery into matters outside

Defendants' conduct as pleaded, and reserves all rights to oppose such discovery, to seek

a protective order, and to request appropriate relief to prevent harassment, undue burden,

or invasion of privacy.

143.    Nothing in this Complaint, and no prior or subsequent communication, shall be

construed as consent to discovery beyond the scope of relevance defined herein, or as a

waiver of any objection, privilege, or protection available under federal law.

144.    Any purported waiver must be explicit, narrowly defined, clearly presented as a

waiver, and knowingly executed by Plaintiff in plain-language writing; silence, omission,

partial disclosure, or procedural complexity shall not constitute waiver.

145.    Defendant City of Scottsdale is sued in its institutional capacity for its own acts,

omissions, policies, customs, and practices, and not a theory of respondeat superior.

146.    Plaintiff remains subject to the same administrative, investigative, and enforcement

systems challenged herein, which continue to operate under unchanged policies,

practices, and methods of administration. The risk of recurrence and continued

impairment alleged does not arise from speculation, but from Defendants' ongoing

reliance on the same procedures following notice, absent formal modification or

withdrawal.

147.    The claims asserted herein necessarily implicate Defendants' methods of
administration, including intake, routing, record handling, escalation, training,
supervision, and enforcement practices, as they operate in practice. Evidence relevant to
these claims includes materials reflecting how such systems functioned during the
relevant period following notice, and is not limited to any single incident, report, or
interaction.

148.    The allegations set forth herein are directed to specific, identifiable methods of
administration, decision-making pathways, and enforcement practices attributable to
Defendant City of Scottsdale. Plaintiff does not seek discovery beyond what is
proportional and necessary to evaluate the existence, operation, and continuation of those
systems as alleged, and does not seek inquiry into matters unrelated to Defendants'
conduct as pleaded.

149.    The factual allegations herein establish discrete, severable issues of liability
independent of damages. Where the operation of Defendants' procedures and post-notice
conduct is undisputed or established by Defendants' own records, liability may be
adjudicated as a matter of law without resolving issues of relief.

## IV. GLOBAL TOLLING AND CHILLING OF REMEDIES

150.    The accrual of Plaintiff's claims was equitably tolled because the City of Scottsdale's
acts, omissions, customs, and practices, pleaded in this Complaint, created and
maintained an objectively coercive environment that materially interfered with and

foreclosed Plaintiff's reasonable ability to pursue timely administrative or judicial remedies.

151.  Plaintiff engaged in protected efforts to seek redress through official governmental channels, including reporting misconduct, requesting lawful processing of complaints and records, and escalating concerns regarding procedural failures and constitutional deprivations.

152.  After Plaintiff's protected escalation, the City of Scottsdale, through state-controlled mechanisms and formal governmental processes, subjected Plaintiff to adverse state action that deprived Plaintiff of liberty and materially impaired Plaintiff's ability to participate in matters affecting Plaintiff's own legal interests. This adverse state action included the invocation and use of civil mental-health detention mechanisms, or the credible threat thereof, in response to Plaintiff's petitioning and complaint activity.

153.  The governmental response to Plaintiff's escalation treated protected civic participation as disqualifying or risk-signaling conduct within state-controlled processes, converting lawful petitioning and complaint activity into a basis for exclusion, re-routing, restriction, or adverse handling. The diversion of administrative complaints and escalation efforts into coercive mental health pathways functioned as a substitute for neutral administrative review rather than as a protective or remedial response.

154.  The City of Scottsdale's practices created a foreseeable and credible threat that further escalation, evidence submission, or participation could trigger renewed adverse state

action. Under an objective standard, such conditions would deter a reasonable person from continuing to pursue remedies through the same channels.

155.    Under the coercive conditions alleged herein, continued exhaustion of internal or external remedies was not safe, reasonable, or practically available. Plaintiff's ability to pursue remedies was obstructed by forces outside Plaintiff's control, including the City's continued control of personnel, processes, routing decisions, record-handling, and access points necessary to seek relief.

156.    The City of Scottsdale maintained the coercive environment without providing neutral, independent, or protective corrective mechanisms sufficient to permit Plaintiff to pursue remedies without a reasonable fear of recurrence of severe deprivation.

157.    The City of Scottsdale knew or should have known based on Plaintiff's repeated communications, requests, and escalations described in this Complaint, that its practices were producing chilling and coercive effects that interfered with access to remedies, and nevertheless permitted those practices to continue unchanged.

158.    Tolling is warranted not due to delay, confusion, or lack of diligence by Plaintiff, but because the City of Scottsdale's conduct and system design materially caused the obstruction and rendered timely pursuit of remedies unavailable as a practical matter during the period of the coercive and chilling conditions alleged herein.

159.    Equitable tolling applies to all claims pleaded in this Complaint, and to all claims whose accrual, discoverability, or safe pursuit was delayed, obstructed, or rendered unavailable by the coercive and chilling conditions alleged herein, for the duration of

such conditions and until a reasonable person could safely and effectively pursue remedies without a credible threat of renewed adverse state action.

160.    The tolling alleged herein is pleaded as a matter of claim preservation and accrual doctrine and is not limited by the evidentiary materials or sources ultimately relied upon to prove the coercive conditions, concealment, obstruction, or chilling effects alleged.

161.    Nothing in this section concedes the accrual date of any claim or limits Plaintiff's ability to rely on later discovered facts that further substantiate, illuminate, or confirm the coercive conditions and obstructive practices alleged herein.

162.    Nothing in the foregoing allegations is intended to expand the scope of this action beyond Defendants' conduct as pleaded, or to assert liability based on isolated error or discretionary disagreement. The allegations are directed solely to the existence, operation, and continuation of policies, practices, and methods of administration attributable to Defendant City of Scottsdale.


## V. CAUSES OF ACTION


163.    Plaintiff incorporates by reference all factual allegations set forth in Section III of this Verified Complaint, and incorporates by reference the Non-Waiver, Non-Consent, and Public-Policy provisions set forth in Appendix A solely for purposes of clarifying the legal effect of Plaintiff's conduct as alleged, as if fully set forth herein.

164.    Each Count set forth below is supported by those factual allegations necessary to establish its elements, as pleaded in Section III, without reliance on Appendix A as an independent source of factual allegations.

165.    Each Count is pleaded separately and independently, and in the alternative to the extent permitted by law. No Count depends upon any other Count, nor upon allegations incorporated solely by virtue of sequence, numbering, or cross-reference.

**COUNT I**

166.    (ADA Title II - Denial of Meaningful Access to Services)

167.    42 U.S.C. § 12132; 28 C.F.R. §§ 35.130, 35.152, 35.160

168.    Defendants are public entities within the meaning of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(1), and at all relevant times operated, administered, and controlled law-enforcement services, programs, and activities, including but not limited to emergency response, investigation of reported crimes, enforcement of protective orders, victim-services access, and related record-handling and decision-making functions.

169.    Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2). At all relevant times, Plaintiff was entitled to participate in and receive the benefits of Defendants' law-enforcement services, programs, and activities on an equal basis with others.

170.   Defendants denied Plaintiff meaningful access to law-enforcement services, programs, and activities, in violation of 42 U.S.C. § 12132, by excluding Plaintiff from effective police response, investigative protection, and enforcement mechanisms that were otherwise available to non-disabled individuals.

171.   The denial of access included but was not limited to discriminatory investigative practices; discriminatory law-enforcement response practices; discriminatory dispatch and intake practices; and discriminatory record-handling practices that affected Plaintiff's ability to obtain protection, investigation, and enforcement services.

172.   Defendants' actions and omissions constituted discrimination by reason of disability, including reliance on disability-based perceptions, stereotypes, or classifications that altered or diminished the level, quality, or availability of law-enforcement services provided to Plaintiff.

173.   After Defendants were placed on notice of Plaintiff's disability and need for nondiscriminatory access to services, Defendants failed to modify policies, practices, or procedures to ensure equal participation and continued to deny Plaintiff meaningful access to law-enforcement services and protections.

174.   Defendants' post-notice inaction and continued use of discriminatory methods of administration had the effect of subjecting Plaintiff to unequal treatment and exclusion from services, in violation of 28 C.F.R. § 35.130(b)(3).

175.   As a direct and proximate result of Defendants' discriminatory investigative practices, law-enforcement response practices, dispatch and intake practices, and record-handling

practices, Plaintiff was deprived of meaningful and equal access to Defendants' law-enforcement services, programs, and activities protected under Title II of the ADA.

176.    As a direct and proximate result of Defendants' violations of Title II of the ADA, Plaintiff was denied the benefits of law-enforcement services, programs, and activities and suffered legally cognizable harm.

177.    Defendants' conduct was knowing and constituted deliberate indifference to Plaintiff's federally protected rights under the ADA.

178.    Plaintiff does not allege an entitlement to any particular enforcement outcome, but rather alleges exclusion from and denial of equal access to law-enforcement services and processes by reason of disability.

179.    Plaintiff is entitled to declaratory and injunctive relief, compensatory damages, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12133 and other applicable law.

180.    The injunctive and declaratory relief sought herein is directed to the formal, documented, and enforceable modification of Defendants' policies, practices, and methods of administration, and is not satisfied by informal assurances, discretionary adjustments, or case-specific actions. Absent such institutionalized changes, the challenged conduct remains capable of repetition and evading review.

**COUNT II**

181.    (Americans with Disabilities Act, Title II – Failure to Provide Reasonable
Modifications)

182.    (42 U.S.C. § 12132; 28 C.F.R. §§ 35.130(b)(7), 35.130(b)(3))

183.    Defendants are public entities within the meaning of Title II of the Americans with
Disabilities Act and are required to make reasonable modifications in policies, practices,
and procedures when such modifications are necessary to avoid discrimination on the
basis of disability, unless Defendants can demonstrate that making the modifications
would fundamentally alter the nature of the service, program, or activity.

184.    Plaintiff is a qualified individual with a disability within the meaning of the ADA and,
at all relevant times, required reasonable modifications to Defendants' law-enforcement
policies, practices, and procedures in order to access services on an equal basis.

185.    After receiving notice of Plaintiff's disability-related needs, Defendants failed to
reasonably modify their policies, practices, and procedures, including but not limited to
those governing law-enforcement response, investigative handling, and administrative
processing of Plaintiff's requests for assistance.

186.    Defendants' failure to provide reasonable modifications resulted in Plaintiff being
denied the benefits of, and excluded from participation in, Defendants' services,
programs, and activities by reason of disability.

187.    As a direct and proximate result of Defendants' failure to provide reasonable
modifications to their policies, practices, and procedures after notice, Plaintiff was denied

meaningful and equal access to Defendants' services, programs, and activities by reason of disability.

188.   After Defendants had actual notice of Plaintiff's disability-related needs and the necessity of reasonable modifications, Defendants continued to operate their law-enforcement services without modification, which foreseeably resulted in Plaintiff's exclusion from and denial of access to those services.

189.   This Count does not allege an entitlement to any particular law-enforcement outcome or exercise of discretion, but rather alleges Defendants' failure to provide reasonable modifications necessary to ensure equal access to services and processes required under Title II of the ADA.

190.   Defendants' acts and omissions were knowing and constituted deliberate indifference to Plaintiff's federally protected rights.

191.   Absent reasonable modification of Defendants' standard intake, routing, and administrative procedures, Plaintiff was unable to access law-enforcement services on an equal basis, because the unmodified procedures foreseeably operated to misroute, delay, or foreclose Plaintiff's participation after notice.

192.   As a direct and proximate result of Defendants' failure to provide reasonable modifications, Plaintiff suffered harm and continues to face a substantial risk of ongoing discrimination unless Defendants' unlawful practices are remedied.

**COUNT III**

193.    (Americans with Disabilities Act, Title II – Failure to Provide Effective
        Communication)

194.    (42 U.S.C. § 12132; 28 C.F.R. §§ 35.160, 35.161, 35.130(b)(3))

195.    Defendants are public entities subject to Title II of the Americans with Disabilities
        Act and are required to take appropriate steps to ensure that communications with
        individuals with disabilities are as effective as communications with others.

196.    Plaintiff is a qualified individual with a disability within the meaning of the ADA and,
        at all relevant times, required effective communication in order to access Defendants'
        law-enforcement services, investigative processes, and administrative responses on an
        equal basis.

197.    After receiving notice of Plaintiff's disability-related communication needs,
        Defendants failed to provide effective communication, including by failing to furnish
        appropriate auxiliary aids or services and by failing to modify communication methods
        used in investigative and administrative interactions.

198.    Defendants' failure to ensure effective communication resulted in Plaintiff being
        denied meaningful access to Defendants' services, programs, and activities by reason of
        disability.

199.    As a direct and proximate result of Defendants' failure to provide effective
        communication after notice, including the failure to furnish appropriate auxiliary aids or

services, Plaintiff was deprived of meaningful and equal access to Defendants' services, programs, and activities by reason of disability.

200.    After Defendants had actual notice of Plaintiff's disability-related communication needs, Defendants continued to engage in investigative and administrative interactions without ensuring effective communication, which foreseeably resulted in Plaintiff's exclusion from and denial of access to law-enforcement services and processes.

201.    This Count does not allege an entitlement to any particular law-enforcement outcome or investigative decision, but rather alleges Defendants' failure to ensure effective communication necessary to provide equal access to services and processes as required under Title II of the ADA.

202.    Defendants' acts and omissions were knowing and constituted deliberate indifference to Plaintiff's federally protected rights.

203.    As a direct and proximate result of Defendants' failure to provide effective communication, Plaintiff suffered harm and continues to face a substantial risk of ongoing exclusion and discrimination unless Defendants' unlawful practices are remedied.

## COUNT IV

204.    (Americans with Disabilities Act, Title II – Discriminatory Methods of Administration)

205.    (42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(3))

206.    Defendants are public entities subject to Title II of the Americans with Disabilities
        Act and are prohibited from utilizing criteria or methods of administration that have the
        effect of subjecting qualified individuals with disabilities to discrimination or that defeat
        or substantially impair accomplishment of the objectives of Defendants' programs,
        services, or activities with respect to individuals with disabilities.

207.    Plaintiff is a qualified individual with a disability within the meaning of the ADA and
        was entitled to participate in and benefit from Defendants' law-enforcement services,
        investigative processes, and administrative procedures on an equal basis.

208.    Defendants employed and maintained methods of administration that, after notice of
        Plaintiff's disability, operated to exclude Plaintiff from full and equal participation in
        Defendants' services, programs, and activities, and to subject Plaintiff to adverse
        treatment by reason of disability.

209.    These discriminatory methods of administration included administrative practices and
        procedural mechanisms that had the effect of denying Plaintiff meaningful access to
        Defendants' services and of channeling Plaintiff into adverse outcomes not imposed on
        similarly situated individuals without disabilities.

210.    Such methods of administration included Defendants' continued reliance, after notice,
        on unmodified investigative, intake, and administrative procedures that operated to screen
        out or disproportionately burden Plaintiff on the basis of disability.

211.    Defendants' use of such methods of administration was knowing and constituted
        deliberate indifference to Plaintiff's federally protected rights.

212.    As a direct and proximate result of Defendants' discriminatory methods of administration, including unmodified investigative, intake, and administrative procedures maintained after notice, Plaintiff was deprived of meaningful and equal access to Defendants' services, programs, and activities by reason of disability.

213.    After Defendants had actual notice of Plaintiff's disability, Defendants continued to employ the same methods of administration without modification, which foreseeably resulted in Plaintiff's exclusion from and disproportionate burden in Defendants' services and processes.

214.    This Count does not allege an entitlement to any particular law-enforcement outcome or discretionary decision, but rather alleges Defendants' use of discriminatory administrative methods that denied equal access to services and processes in violation of Title II of the ADA.

215.    As a direct and proximate result of Defendants' discriminatory methods of administration, Plaintiff suffered harm and remains at risk of continued exclusion and discrimination unless Defendants' unlawful practices are enjoined.


**COUNT V**

216.    (Americans with Disabilities Act, Title II – Use of Disability as Basis for Adverse Action)

217.    (42 U.S.C. § 12132; 28 C.F.R. § 35.130(a), (b)(1))

218.   Defendants are public entities subject to Title II of the Americans with Disabilities Act and are prohibited from excluding a qualified individual with a disability from participation in, denying the benefits of, or otherwise subjecting such individual to discrimination by reason of disability.

219.   Plaintiff is a qualified individual with a disability within the meaning of the ADA, including being regarded as having a disability, and was entitled to receive Defendants' law-enforcement services, investigative functions, and administrative processes on an equal basis.

220.   After notice of Plaintiff's disability or perceived disability, Defendants subjected Plaintiff to adverse action by reason of disability, including escalation to more restrictive or punitive measures not imposed on similarly situated individuals without disabilities.

221.   The adverse treatment reflected a departure from neutral eligibility and service criteria, substituting disability-based assumptions or classifications for individualized, objective assessment in determining access to or conditions of Defendants' services.

222.   Defendants utilized Plaintiff's actual or perceived disability as a basis for adverse treatment, rather than providing equal access to services or reasonable modifications as required by law.

223.   Defendants' actions constituted discrimination by reason of disability and were knowing, reflecting deliberate indifference to Plaintiff's federally protected rights.

224.   As a direct and proximate result of Defendants' use of Plaintiff's actual or perceived disability as a basis for adverse action after notice, Plaintiff was deprived of meaningful and equal access to Defendants' services, programs, and activities by reason of disability.

225.   After Defendants had actual notice of Plaintiff's disability or perceived disability, Defendants continued to subject Plaintiff to more restrictive or punitive measures based on disability classifications, which foreseeably resulted in Plaintiff's exclusion from and adverse conditions on Defendants' services and processes.

226.   This Count does not allege an entitlement to any particular law-enforcement outcome or discretionary enforcement decision, but rather alleges Defendants' use of disability-based classifications and assumptions as the basis for adverse treatment in violation of Title II of the ADA.

227.   As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered harm and remains subject to ongoing risk of adverse treatment based on disability unless Defendants' unlawful practices are enjoined.

**COUNT VI**

228.   (Americans with Disabilities Act, Title II – Retaliation)

229.   (42 U.S.C. § 12203; 28 C.F.R. § 35.134)

230.   Defendants are public entities subject to Title II of the Americans with Disabilities Act and are prohibited from retaliating against any individual for opposing practices

made unlawful by the ADA or for requesting reasonable accommodations or other protections guaranteed by federal law.

231.    Plaintiff engaged in protected activity by requesting accommodations, asserting rights under the ADA, and seeking equal access to Defendants' services, programs, and activities.

232.    After Plaintiff engaged in protected activity, Defendants subjected Plaintiff to adverse actions that would deter a reasonable person from exercising rights under the ADA.

233.    The adverse actions included the use of state-controlled processes and official governmental mechanisms to escalate, recharacterize, or penalize Plaintiff's protected accommodations requests and ADA advocacy in a manner reasonably foreseeable to chill continued exercise of ADA-protected rights and to deter a person of ordinary firmness from engaging in such protected activity.

234.    Defendants' adverse actions were taken because of Plaintiff's protected activity and were not justified by legitimate, nondiscriminatory reasons.

235.    Defendants' conduct constituted unlawful retaliation in violation of 42 U.S.C. § 12203 and its implementing regulations.

236.    As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff suffered harm and remains subject to ongoing deterrence and interference with the exercise of federally protected rights unless Defendants' unlawful practices are enjoined.

237.    After Plaintiff engaged in protected activity by asserting ADA rights and requesting accommodations, Defendants utilized state-controlled processes and official mechanisms

to escalate or penalize Plaintiff's requests, which foreseeably resulted in a chilling effect on continued exercise of ADA-protected rights.

238.   This Count does not challenge lawful governmental petitioning or neutral administrative processes, but rather alleges Defendants' use of official mechanisms as a means of retaliation for Plaintiff's protected ADA activity in violation of federal law.

## COUNT VII

239.   (Americans with Disabilities Act, Title II – Coercion, Intimidation, or Interference)

240.   (42 U.S.C. § 12203; 28 C.F.R. § 35.134)

241.   Defendants are public entities subject to Title II of the Americans with Disabilities Act and are prohibited from coercing, intimidating, threatening, or interfering with any individual in the exercise or enjoyment of rights protected by the ADA.

242.   Plaintiff sought to exercise rights protected by the ADA, including requesting accommodations, seeking effective communication, and opposing practices believed to be unlawful under federal disability law.

243.   In response to Plaintiff's exercise and attempted exercise of ADA-protected rights, Defendants engaged in conduct that had the purpose or effect of coercing, intimidating, threatening, or interfering with Plaintiff's exercise of those rights.

244.   The coercive and interfering conduct included the use of official governmental processes and state-controlled mechanisms to apply pressure, impose adverse

consequences, or condition access to services in a manner reasonably foreseeable to discourage, suppress, or penalize Plaintiff's continued exercise of ADA-protected rights.

245.    Defendants' conduct would deter a reasonable person from asserting or continuing to assert ADA-protected rights and was not a legitimate or proportionate response to Plaintiff's requests or protected activity.

246.    The coercive and interfering conduct was carried out through Defendants' use of official governmental authority, processes, and state-controlled mechanisms rather than through private or incidental acts.

247.    Defendants' actions constituted unlawful coercion, intimidation, or interference in violation of 42 U.S.C. § 12203 and its implementing regulations.

248.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered harm and remains subject to ongoing interference with the exercise of federally protected rights unless Defendants' practices are enjoined.

249.    As a direct and proximate result of Defendants' coercive, intimidating, and interfering conduct undertaken in response to Plaintiff's exercise of ADA-protected rights, Plaintiff was subjected to deterrence and interference with the exercise and enjoyment of rights protected under the ADA.

250.    After Plaintiff sought to exercise ADA-protected rights, Defendants employed official governmental processes and state-controlled mechanisms to apply pressure and impose adverse consequences, which foreseeably resulted in interference with and chilling of Plaintiff's continued exercise of those rights.

251.    This Count does not challenge lawful governmental petitioning or neutral administrative action, but rather alleges Defendants' use of official authority and processes as a means of coercion, intimidation, and interference with ADA-protected rights in violation of federal law.

**COUNT VIII**

252.    (Rehabilitation Act of 1973, Section 504 – Exclusion from Federally Funded Services)

253.    (29 U.S.C. § 794; 28 C.F.R. Part 41)

254.    Defendants are recipients of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act and are therefore prohibited from excluding qualified individuals with disabilities from participation in, denying them the benefits of, or subjecting them to discrimination under any program or activity receiving federal funds.

255.    Plaintiff is a qualified individual with a disability within the meaning of Section 504 and was eligible to participate in and receive the benefits of Defendants' federally funded programs, services, and activities.

256.    Defendants excluded Plaintiff from participation in, denied Plaintiff the benefits of, and otherwise subjected Plaintiff to discrimination under such federally funded programs and activities by reason of disability.

257.    Defendants failed to provide Plaintiff with meaningful access to programs, services, and activities receiving federal financial assistance, including by failing to make

Verified Complaint for Declaratory Injunctive and Monetary Relief

reasonable accommodations and by maintaining practices that had the effect of excluding or disadvantaging Plaintiff on the basis of disability.

258.    Defendants had notice of Plaintiff's disability and of the exclusionary effects of their practices and nevertheless failed to take corrective action, constituting discrimination in violation of Section 504 of the Rehabilitation Act.

259.    As a direct and proximate result of Defendants' exclusionary practices in programs and activities receiving federal financial assistance, Plaintiff was deprived of meaningful and equal access to the benefits of such federally funded programs by reason of disability.

260.    After Defendants had actual notice of Plaintiff's disability and of the exclusionary effects of their practices, Defendants continued to operate federally funded programs without modification, which foreseeably resulted in Plaintiff's continued exclusion from and denial of benefits under such programs and activities.

261.    This Count does not allege an entitlement to any particular law-enforcement outcome or discretionary decision, but rather alleges Defendants' exclusion of Plaintiff from participation in and benefits of federally funded programs and activities by reason of disability in violation of Section 504 of the Rehabilitation Act.

## COUNT IX

262.    (Rehabilitation Act of 1973, Section 504 – Failure to Accommodate)

263.    (29 U.S.C. § 794; 28 C.F.R. Part 41)

264.    Defendants are recipients of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act and are obligated to provide reasonable accommodations to qualified individuals with disabilities to ensure equal access to federally funded programs, services, and activities.

265.    Plaintiff is a qualified individual with a disability within the meaning of Section 504 and was entitled to reasonable accommodations in connection with Defendants' federally funded programs, services, and activities.

266.    Defendants had actual notice of Plaintiff's disability and of Plaintiff's need for accommodations in order to access and participate in Defendants' federally funded programs, services, and activities.

267.    Despite such notice, Defendants failed to provide reasonable accommodations and failed to take timely or effective action to modify policies, practices, or procedures necessary to afford Plaintiff equal access.

268.    Defendants' failure to accommodate occurred within the scope of their federally funded programs and constituted discrimination on the basis of disability in violation of Section 504 of the Rehabilitation Act.

269.    As a direct and proximate result of Defendants' failure to accommodate after notice, Plaintiff was denied equal access to federally funded programs, services, and activities and suffered harm that continues absent corrective action by Defendants.

270.    As a direct and proximate result of Defendants' failure to provide reasonable
accommodations within federally funded programs after notice, Plaintiff was deprived of
meaningful and equal access to the benefits of such programs by reason of disability.

271.    After Defendants had actual notice of Plaintiff's disability and need for
accommodations, Defendants continued to operate federally funded programs without
providing reasonable modifications, which foreseeably resulted in Plaintiff's denial of
equal access to such programs and services.

272.    This Count does not allege an entitlement to any particular law-enforcement outcome
or discretionary decision, but rather alleges Defendants' failure to provide reasonable
accommodations necessary to ensure equal access to federally funded programs and
activities in violation of Section 504 of the Rehabilitation Act.

## COUNT X

273.    (Rehabilitation Act of 1973, Section 504 – Deliberate Indifference)

274.    (29 U.S.C. § 794; 28 C.F.R. Part 41)

275.    Defendants are recipients of federal financial assistance and are subject to the
requirements of Section 504 of the Rehabilitation Act.

276.    Plaintiff is a qualified individual with a disability within the meaning of Section 504.

277.    Defendants had actual knowledge that Plaintiff was a qualified individual with a
disability and that Defendants' actions and omissions created a substantial likelihood of
denying Plaintiff equal access to federally funded programs, services, and activities.

278.    Despite such knowledge, Defendants failed to take timely, reasonable, or effective corrective action to remedy the known risk of disability-based exclusion and harm.

279.    Defendants' conscious disregard of known accommodations needs and known risks to Plaintiff's federally protected rights constituted deliberate indifference under Section 504 of the Rehabilitation Act.

280.    As a direct and proximate result of Defendants' deliberate indifference, Plaintiff was subjected to disability-based discrimination, denied equal access to federally funded programs, services, and activities, and suffered harm that continues absent corrective action by Defendants.

281.    As a direct and proximate result of Defendants' actual knowledge of the substantial risk of disability-based exclusion and their failure to take reasonable corrective action, Plaintiff was deprived of meaningful and equal access to federally funded programs, services, and activities by reason of disability.

282.    After Defendants had actual knowledge that their actions and omissions created a substantial likelihood of denying Plaintiff equal access to federally funded programs, Defendants continued to take no timely or effective corrective action, which foreseeably resulted in Plaintiff's continued exclusion from and denial of benefits under such programs and activities.

283.    This Count does not allege an entitlement to any particular law-enforcement outcome or discretionary decision, but rather alleges Defendants' deliberate indifference to known

risks of disability-based exclusion from federally funded programs and activities in violation of Section 504 of the Rehabilitation Act.

## COUNT XI

284.  (Americans with Disabilities Act, Title II and Rehabilitation Act § 504 – Post-Notice Discrimination)

285.  (42 U.S.C. § 12132; 29 U.S.C. § 794; 28 C.F.R. Parts 35 and 41)

286.  Defendants are public entities and recipients of federal financial assistance subject to Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

287.  Plaintiff is a qualified individual with a disability within the meaning of the ADA and Section 504.

288.  Defendants had actual notice of Plaintiff's disability and of Plaintiff's requests for accommodations and effective communication.

289.  After receiving such notice, Defendants continued to engage in acts and omissions that denied Plaintiff meaningful access to programs, services, and activities, and subjected Plaintiff to differential treatment by reason of disability.

290.  The post-notice denial of access resulted from Defendants' continued reliance on unmodified policies, practices, or administrative methods that, after notice, operated to screen out or disproportionately burden Plaintiff on the basis of disability rather than ensuring meaningful access through reasonable modification.

291.    Defendants failed to modify policies, practices, or methods of administration after
notice, and failed to take corrective action to prevent ongoing disability-based exclusion
and harm.

292.    The post-notice discrimination alleged herein constitutes independent and continuing
violations arising from Defendants' failure to alter policies, practices, and methods of
administration after receiving notice of Plaintiff's disability and access needs.

293.    Defendants' conduct after notice constituted deliberate discrimination under Title II of
the ADA and Section 504 of the Rehabilitation Act.

294.    As a direct and proximate result of Defendants' post-notice discrimination, Plaintiff
was denied equal access to public services and federally funded programs and suffered
continuing harm.

295.    As a direct and proximate result of Defendants' continued acts and omissions after
notice, Plaintiff was deprived of meaningful and equal access to public services and
federally funded programs protected under Title II of the ADA and Section 504 of the
Rehabilitation Act by reason of disability.

296.    After Defendants had actual notice of Plaintiff's disability and access needs,
Defendants continued to rely on unmodified policies, practices, and administrative
methods, which foreseeably resulted in ongoing denial of access and differential
treatment in Defendants' services and programs.

297.    This Count does not allege an entitlement to any particular law-enforcement outcome
or discretionary decision, but rather alleges Defendants' post-notice failure to modify

policies, practices, and methods of administration necessary to prevent ongoing

disability-based exclusion in violation of Title II of the ADA and Section 504 of the

Rehabilitation Act.

## COUNT XII

298.   (Americans with Disabilities Act, Title II and Rehabilitation Act § 504 –Failure to

Engage in the Interactive Process)

299.   (42 U.S.C. § 12132; 29 U.S.C. § 794; 28 C.F.R. Parts 35 and 41)

300.   Defendants are public entities and recipients of federal financial assistance subject to

Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

301.   Plaintiff is a qualified individual with a disability within the meaning of the ADA and

Section 504.

302.   Plaintiff provided Defendants with notice of disability-related needs and requests for

accommodations and effective communication.

303.   Defendants failed to engage in a timely, good-faith interactive process to identify and

implement reasonable modifications or auxiliary aids necessary to afford Plaintiff

meaningful access to programs, services, and activities.

304.   As a result of Defendants' failure to engage in a timely, good-faith interactive process

after notice, Plaintiff was deprived of meaningful and equal access to Defendants'

programs, services, and activities protected under Title II of the ADA and Section 504 of

the Rehabilitation Act.

305.    The failure to engage in a timely, good-faith interactive process is pleaded herein as probative evidence of Defendants' post-notice denial of meaningful access, failure to provide reasonable modifications, and deliberate indifference to Plaintiff's federally protected rights, rather than as an independent cause of action.

306.    This Count does not assert an independent entitlement to a particular accommodation, outcome, or discretionary decision, but pleads Defendants' failure to engage in the interactive process solely as post-notice conduct evidencing denial of access, failure to provide reasonable modifications, and deliberate indifference under Title II of the ADA and Section 504 of the Rehabilitation Act.

307.    After receiving notice of Plaintiff's disability-related needs, Defendants' failure to assess requests, propose alternatives, or communicate determinations operated to deny Plaintiff meaningful access to services, programs, and activities, in violation of Title II of the ADA and Section 504 of the Rehabilitation Act.

308.    After Defendants had actual notice of Plaintiff's disability-related needs and requests for accommodations, Defendants continued to take no action to assess, respond to, or implement reasonable modifications, which foreseeably resulted in Plaintiff's continued denial of meaningful access to services, programs, and activities.

309.    Defendants failed to assess requested accommodations, failed to propose alternative reasonable modifications, and failed to document or communicate any interactive determination.

310. Defendants' failure to engage in the interactive process resulted in the denial of meaningful access and constituted deliberate discrimination under Title II of the ADA and Section 504 of the Rehabilitation Act.

311. The denial of meaningful access alleged herein resulted from Defendants' continued inaction and procedural non-engagement after notice, rather than from any isolated or discretionary decision, and operated to foreclose Plaintiff's ability to obtain reasonable modifications through required administrative processes.

312. As a direct and proximate result of Defendants' failure to engage in the interactive process, Plaintiff was denied equal access to public services and federally funded programs and suffered ongoing harm.

**COUNT XIII**

313. (Americans with Disabilities Act, Title II and Rehabilitation Act § 504 – Discriminatory Record-Handling Practices)

314. (42 U.S.C. § 12132; 29 U.S.C. § 794; 28 C.F.R. Parts 35 and 41)

315. Defendants are public entities and recipients of federal financial assistance subject to Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

316. Plaintiff is a qualified individual with a disability within the meaning of the ADA and Section 504.

317. Defendants created, maintained, relied upon, and disseminated official records relating to Plaintiff in a manner that was discriminatory by reason of disability.

318.   Defendants' record-handling practices reflected disability-based assumptions,
stereotypes, or characterizations and were used to justify, support, or perpetuate adverse
actions affecting Plaintiff's access to programs, services, and activities.

319.   Defendants failed to implement nondiscriminatory record-keeping practices and failed
to correct or mitigate the discriminatory impact of disability-based record creation and
use after notice.

320.   Defendants' discriminatory record-handling practices were operationally relied upon
in decision-making processes affecting Plaintiff's access to services, investigations, and
administrative outcomes.

321.   Defendants' discriminatory record-handling practices denied Plaintiff meaningful
access to public services and federally funded programs and constituted deliberate
indifference under Title II of the ADA and Section 504 of the Rehabilitation Act.

322.   As a direct and proximate result of Defendants' discriminatory record-handling
practices, Plaintiff was denied equal access to services and suffered ongoing harm.

323.   As a result of Defendants' discriminatory creation, maintenance, reliance upon, and
dissemination of official records reflecting disability-based assumptions, Plaintiff was
deprived of meaningful and equal access to Defendants' services, investigations, and
administrative processes protected under Title II of the ADA and Section 504 of the
Rehabilitation Act.

324.   This Count does not allege an entitlement to any particular investigative conclusion,
enforcement action, or discretionary outcome, but rather alleges Defendants' use of

discriminatory record-handling practices that displaced neutral administrative processes and denied Plaintiff equal access to services and programs by reason of disability.

325.    The discriminatory record-handling practices alleged herein operated as a method of administration by which Defendants structured, justified, and executed decisions affecting Plaintiff's access to services, investigations, and administrative processes after notice.

326.    After Defendants had actual notice of Plaintiff's disability and the discriminatory impact of their record-handling practices, Defendants continued to rely upon, disseminate, and operationalize such records without correction or mitigation, which foreseeably resulted in Plaintiff's continued exclusion from and denial of meaningful access to services, investigations, and administrative processes.

## COUNT XIV

327.    (Americans with Disabilities Act, Title II and Rehabilitation Act § 504 – Disparate Impact on Disabled Complainant)

328.    (42 U.S.C. § 12132; 29 U.S.C. § 794; 28 C.F.R. Parts 35 and 41)

329.    Defendants are public entities and recipients of federal financial assistance subject to Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

330.    Plaintiff is a qualified individual with a disability within the meaning of the ADA and Section 504.

331.   Defendants implemented and enforced policies, practices, and procedures that were neutral on their face but had the effect of disproportionately burdening and excluding individuals with disabilities, including Plaintiff.

332.   Defendants' neutral policies and practices resulted in adverse outcomes for Plaintiff by reason of disability, including diminished access to programs, services, and activities provided by Defendants.

333.   Defendants failed to make reasonable modifications to such policies, practices, or procedures when necessary to avoid discrimination on the basis of disability.

334.   Defendants' actions and omissions caused a disparate impact on Plaintiff as a disabled complainant and denied Plaintiff meaningful and equal access to public services and federally funded programs, in violation of Title II of the ADA and Section 504 of the Rehabilitation Act.

335.   As a result of Defendants' enforcement of facially neutral policies, practices, and procedures without reasonable modification, Plaintiff was deprived of meaningful and equal access to Defendants' public services and federally funded programs by reason of disability.

336.   Defendants' failure to make reasonable modifications to such neutral policies after notice contributed to the disproportionate exclusion of individuals with disabilities, including Plaintiff. After Defendants had actual notice that their facially neutral policies and practices operated to disproportionately burden individuals with disabilities, including Plaintiff, Defendants continued to enforce such policies without reasonable

modification, which foreseeably resulted in Plaintiff's continued exclusion from and diminished access to services and programs.

337.    This Count does not allege an entitlement to any particular enforcement outcome or discretionary decision, but rather alleges that Defendants' facially neutral policies, when enforced without reasonable modification, operated to disproportionately exclude and burden Plaintiff by reason of disability in violation of Title II of the ADA and Section 504 of the Rehabilitation Act.

338.    The moving force behind the disparate impact alleged in this Count was Defendants' continued enforcement, after notice, of facially neutral policies, practices, and procedures without reasonable modification, which operated as a method of administration that disproportionately burdened individuals with disabilities.

339.    As a direct and proximate result of Defendants' disparate-impact discrimination, Plaintiff suffered ongoing exclusion from services and related harms.

## COUNT XV

340.    (Fourteenth Amendment – Procedural Due Process)

341.    (Liberty Deprivation / Confinement)

342.    (42 U.S.C. § 1983)

343.    Defendants acted under color of state law at all times relevant to this Count.

Verified Complaint for Declaratory Injunctive and Monetary Relief

344.  Plaintiff possessed a constitutionally protected liberty interest in freedom from involuntary confinement, detention, or restraint, as well as a protected interest in personal security and safety.

345.  Defendants deprived Plaintiff of these protected liberty interests through actions and omissions that resulted in loss of freedom and exposure to harm without providing adequate procedural safeguards.

346.  The deprivation of liberty occurred through the initiation, authorization, or continuation of state-controlled confinement or restraint mechanisms that imposed a loss of physical freedom without the procedural safeguards required by the Fourteenth Amendment.

347.  As a result of Defendants' initiation, authorization, or continuation of state-controlled confinement or restraint mechanisms, Plaintiff was deprived of physical liberty and freedom of movement without the procedural protections required by the Fourteenth Amendment.

348.  Defendants failed to afford Plaintiff constitutionally required procedural protections, including but not limited to timely notice, a neutral and detached decision-maker, and a meaningful opportunity to be heard prior to or promptly following the deprivation of liberty.

349.  Defendants further failed to employ reasonable procedural measures to safeguard Plaintiff's liberty and safety interests, despite having authority and opportunity to do so.

350.   After Defendants had authority and opportunity to provide constitutionally required procedural safeguards in connection with the restraint imposed, Defendants failed to do so, which foreseeably resulted in Plaintiff's continued deprivation of liberty without due process of law.

351.   The procedural protections denied to Plaintiff were required under clearly established law governing state-initiated restraints on liberty and were feasible under the circumstances.

352.   This Count does not allege a failure to protect Plaintiff from private harm or an entitlement to discretionary law-enforcement action, but rather alleges the use or authorization of state-controlled restraint mechanisms that imposed a loss of liberty without constitutionally required procedural safeguards.

353.   The procedural safeguards denied to Plaintiff—including notice, a neutral decision-maker, and a meaningful opportunity to be heard—were required before or promptly after the imposition of state-controlled restraint and were feasible under the circumstances.

354.   Defendants' acts and omissions were arbitrary and lacked sufficient procedural justification, thereby violating Plaintiff's rights to procedural due process under the Fourteenth Amendment.

355.   As a direct and proximate result of Defendants' deprivation of liberty without due process of law, Plaintiff suffered loss of freedom, exposure to danger, and related harms.

**COUNT XVI**

356.  (Fourteenth Amendment – Procedural Due Process)

357.  (Arbitrary Enforcement of Mandatory Regimes)

358.  (42 U.S.C. § 1983)

359.  Defendants acted under color of state law at all times relevant to this Count.

360.  Plaintiff possessed a constitutionally protected liberty and procedural interest in non-arbitrary access to, and participation in, state-created procedural mechanisms governing the intake, routing, consideration, and disposition of matters affecting her safety, legal status, and access to governmental protection.

361.  This protected interest arises from the State's creation and operation of procedural mechanisms governing complaint intake, screening, routing, documentation, and review, and does not arise from any asserted entitlement to police protection, arrest, prosecution, or enforcement outcomes.

362.  The protected interest asserted herein does not arise from any entitlement to a particular enforcement outcome or arrest decision, but from Plaintiff's entitlement to neutral, consistent, and non-arbitrary operation of the procedural channels the State itself established for complaint intake, mandatory screening, documentation, referral, and review once Plaintiff invoked those processes.

363.  Defendants deprived Plaintiff of this protected procedural interest by selectively bypassing, nullifying, or inconsistently applying established intake, routing, and review

procedures governing reported protective-order violations, without notice, neutral criteria, or any articulated procedural basis.

364.    As a result of Defendants' selective bypassing, nullification, and inconsistent application of the State's mandatory intake, routing, and review procedures, Plaintiff was deprived of her protected liberty and procedural interest in non-arbitrary access to and participation in those state-created mechanisms.

365.    Defendants' conduct substituted ad hoc, standardless decision-making for the procedural regularity required once the State undertook to process Plaintiff's reports through its own mandatory screening and administrative mechanisms.

366.    After Plaintiff invoked the State's mandatory procedural channels and after Defendants had authority and obligation to process her reports through those channels, Defendants' ad hoc and standardless deviations foreseeably resulted in the deprivation of Plaintiff's access to required procedural safeguards.

367.    The deprivation consisted of the arbitrary denial of access to lawful procedural pathways, including intake, documentation, referral, and review, rather than the denial of any substantive enforcement outcome. Plaintiff does not assert a constitutional right to compel enforcement action, but rather the right to non-arbitrary access to and participation in the procedural channels the State itself established once it undertook to process her reports.

368.    This Count does not allege an entitlement to discretionary enforcement action or to any particular protective outcome, but rather alleges Defendants' arbitrary disruption of

Verified Complaint for Declaratory Injunctive and Monetary Relief

mandatory procedural regimes the State itself established and undertook to operate once
Plaintiff invoked those processes.

369.   By foreclosing Plaintiff's access to established procedural safeguards and by
collapsing or bypassing required decision-making steps, Defendants deprived Plaintiff of
constitutionally required procedural protections under the Fourteenth Amendment.

370.   As a direct and proximate result of Defendants' arbitrary disruption and nullification
of required procedural channels, Plaintiff suffered deprivation of liberty-related interests,
exposure to harm, and loss of meaningful access to governmental processes.

371.   The procedural protections denied to Plaintiff, including neutral application of intake
criteria, consistent routing, documentation, and review—were required once the State
undertook to process Plaintiff's reports through its mandatory administrative mechanisms
and were feasible under the circumstances.

## COUNT XVII

372.   (Fourteenth Amendment – Procedural Due Process)

373.   (Failure to Apply Mandatory Duties)

374.   (42 U.S.C. § 1983)

375.   Defendants acted under color of state law at all times relevant to this Count.

376.   Plaintiff possessed a constitutionally protected procedural interest in the non-arbitrary
application of state-created mandatory enforcement regimes and in the availability of
constitutionally adequate procedures governing any departure from those regimes once

specified factual predicates were satisfied. This interest arises from enforcement duties that are mandatory by statute or binding policy and does not arise from any asserted entitlement to arrest, prosecution, or discretionary enforcement outcomes.

377. The protected interest alleged in this Count is procedural in nature and arises from Defendants' obligation to apply mandatory enforcement duties according to law or, if departing from such duties, to follow constitutionally adequate procedures governing such departures, rather than from any asserted entitlement to a particular arrest, prosecution, or enforcement outcome.

378. As a result of Defendants' method of administering enforcement decisions by bypassing mandatory arrest and enforcement duties without invoking any procedurally authorized departure mechanism, Plaintiff was deprived of her protected procedural interest in non-arbitrary application of state-created mandatory enforcement regimes.

379. Defendants deprived Plaintiff of this protected procedural interest by failing to apply mandatory enforcement duties according to law or, in the alternative, by failing to invoke or follow any constitutionally adequate procedure governing departure from those duties, instead substituting ad hoc judgment in place of required procedural safeguards.

380. After Defendants had actual knowledge of facts triggering mandatory enforcement duties under applicable law or binding policy, Defendants nevertheless continued to administer enforcement decisions without applying those duties or invoking any procedurally authorized mechanism for deviation, which directly resulted in the deprivation of Plaintiff's protected procedural interest.

381.    Defendants' failure to follow mandatory enforcement duties deprived Plaintiff of the procedural protections guaranteed by the Fourteenth Amendment, including the right to have non-discretionary legal safeguards applied as written.

382.    Defendants' acts and omissions constituted a failure to follow required legal procedures and resulted in arbitrary deprivation of Plaintiff's procedural due process rights.

383.    This Count does not allege a constitutional right to compel arrest, prosecution, or discretionary enforcement action, but rather alleges Defendants' failure to apply mandatory legal safeguards or to provide constitutionally sufficient process when declining to do so.

384.    The moving force behind the deprivation alleged in this Count was Defendants' method of administering enforcement decisions without applying mandatory duties or providing procedural safeguards governing departures from those duties.

385.    As a direct and proximate result of Defendants' failure to follow mandatory enforcement duties, Plaintiff was denied the benefit of required legal protections and suffered resulting harms.

## COUNT XVIII

386.    (Fourteenth Amendment – Procedural Due Process)

387.    (Lack of Neutral Decision-Maker)

388.    (42 U.S.C. § 1983)

389. Defendants acted under color of state law at all times relevant to this Count.

390. Plaintiff possessed a constitutionally protected right to a neutral and detached decision-maker in proceedings affecting liberty and safety interests.

391. This claim is limited to state-controlled determinations that operated as functional adjudications affecting Plaintiff's liberty or safety interests, including authorization, continuation, or ratification of coercive restraints or liberty-altering interventions, and does not challenge the neutrality of routine investigative activity standing alone.

392. Defendants deprived Plaintiff of this right by collapsing investigative, evaluative, and decision-making roles into the same actors, thereby eliminating the neutrality required by the Fourteenth Amendment.

393. As a result of Defendants' institutional practice of collapsing investigative, evaluative, and decision-making authority into the same actors, Plaintiff was deprived of her constitutionally protected right to a neutral and detached decision-maker in proceedings affecting her liberty and safety interests.

394. The lack of neutrality arose from institutional practices that vested investigative authority, evaluative judgment, and final decision-making power within the same governmental actors or closed decision-making channels, without independent review or procedural separation sufficient to satisfy constitutional requirements.

395. Defendants initiated, influenced, and effectuated adverse actions against Plaintiff without review by a neutral and independent decision-maker, and without meaningful procedural separation between investigation and adjudication.

Verified Complaint for Declaratory Injunctive and Monetary Relief

396.  The absence of a neutral and detached decision-maker resulted from institutional
design and policy choices, not isolated error or individual deviation.

397.  After Defendants had actual notice that their decision-making structure lacked neutral
and independent review in proceedings affecting Plaintiff's liberty and safety interests,
Defendants continued to authorize, continue, or ratify liberty-altering actions through the
same non-neutral decision-makers, which resulted in Plaintiff's deprivation of procedural
due process.

398.  Defendants' decision-making process was structurally biased due to the absence of
institutional safeguards ensuring neutrality, independence, and objective review.

399.  By failing to provide a neutral decision-maker, Defendants subjected Plaintiff to
arbitrary governmental action and denied constitutionally required procedural
protections.

400.  This Count does not allege a failure to protect Plaintiff from private harm or an
entitlement to any particular enforcement outcome, but instead alleges the displacement
of constitutionally required procedural safeguards through Defendants' institutional
decision-making structure that foreclosed neutral adjudication.

401.  The moving force behind the deprivation alleged in this Count was Defendants'
institutional method of administration, which vested investigative, evaluative, and
adjudicative authority in the same actors without independent review, operating as an
established municipal practice in proceedings affecting Plaintiff's liberty and safety
interests.

402.   As a direct and proximate result of Defendants' lack of a neutral decision-maker,
       Plaintiff suffered deprivation of procedural due process and resulting harms.

## COUNT XIX

403.   (Fourteenth Amendment – Substantive Due Process)

404.   (State-Created Danger)

405.   (42 U.S.C. § 1983)

406.   Defendants acted under color of state law at all times relevant to this Count.

407.   Plaintiff possessed a constitutionally protected right to bodily integrity and personal
       security under the Fourteenth Amendment.

408.   Defendants affirmatively created and increased the risk of harm to Plaintiff by their
       actions and omissions, including the misuse of governmental authority and the alteration
       of Plaintiff's safety position relative to known risks.

409.   The increased danger arose from the Defendants' exercise of state authority in
       assuming control over, directing, or constraining Plaintiff's access to protective measures
       or lawful remedies, thereby restructuring the risk environment in a manner that
       foreseeably heightened Plaintiff's exposure to harm.

410.   Defendants' affirmative conduct went beyond mere nonfeasance and directly altered
       Plaintiff's safety position through the exercise of state authority.

411.   As a result of Defendants' affirmative exercise of state authority to assume control
       over, direct, constrain, or alter Plaintiff's access to protective measures and lawful

remedies, Plaintiff was deprived of bodily integrity and personal security and placed in a more dangerous position than she would have occupied absent Defendants' intervention.

412.    Defendants had actual notice of a specific and foreseeable risk of harm to Plaintiff and nevertheless acted in a manner that exposed Plaintiff to increased danger or failed to act after undertaking control over circumstances affecting Plaintiff's safety.

413.    After Defendants had actual notice of the specific and foreseeable risk of harm to Plaintiff, Defendants nevertheless continued to exercise state authority over circumstances affecting Plaintiff's safety without withdrawing, mitigating, or neutralizing the danger created by their prior intervention, which directly and foreseeably resulted in Plaintiff's increased exposure to harm.

414.    Defendants' conduct placed Plaintiff in a more dangerous position than that in which Plaintiff would have been absent Defendants' intervention and assumption of authority.

415.    This Count does not allege a failure to protect Plaintiff from private violence or an entitlement to police protection, but instead alleges Defendants' affirmative misuse of state authority to restructure Plaintiff's risk environment in a manner that created or substantially increased a specific danger, thereby triggering substantive due process liability under the state-created danger doctrine.

416.    Defendants acted with deliberate indifference to the known and obvious risk of harm created by their conduct.

417.    As a direct and proximate result of Defendants' state-created danger, Plaintiff suffered deprivation of substantive due process and resulting harms.

**COUNT XX**

418. (Substantive Due Process – Deliberate Indifference)

419. Alternative and Supporting Theory)

420. (42 U.S.C. § 1983)

421. Defendants acted under color of state law at all times relevant to this Count.

422. Plaintiff possessed a constitutionally protected right to bodily integrity and personal
security under the Fourteenth Amendment.

423. Defendants had actual knowledge of facts giving rise to a substantial and foreseeable
risk of harm to Plaintiff.

424. Despite that knowledge, Defendants consciously disregarded the known risk by
failing to take reasonable measures within their authority to prevent or mitigate harm.

425. Defendants' deliberate indifference occurred in a context where they had time for
reasoned judgment and were not acting under exigent or split-second conditions.

426. The deliberate indifference manifested through Defendants' failure to employ
available safeguards, protocols, or corrective measures that were within their authority
and customarily used to address known risks, thereby allowing the foreseeable danger to
persist or worsen.

427. Defendants' conduct constituted deliberate indifference, in that Defendants
recognized the excessive risk to Plaintiff's safety and nevertheless failed to act or acted in
a manner that predictably exacerbated that risk.

Verified Complaint for Declaratory Injunctive and Monetary Relief

428. Defendants' deliberate indifference was not the result of mere negligence, error in judgment, or inadvertence, but reflected a conscious disregard for Plaintiff's constitutional rights.

429. This Count does not allege a mere failure to protect Plaintiff from private violence or an entitlement to police protection, but instead alleges Defendants' deliberate indifference in the exercise of state authority after acquiring actual knowledge of a substantial and foreseeable risk of harm.

430. As a direct and proximate result of Defendants' deliberate indifference, Plaintiff suffered deprivation of substantive due process and resulting harms.

431. This Count is pleaded in the alternative and sets forth the requisite mental state supporting Plaintiff's state-created danger claim and any other substantive due process violations arising from Defendants' affirmative conduct.


## COUNT XXI

432. (Fourth Amendment – Unreasonable Seizure)

433. (Civil Mental-Health Detention Without Probable Cause)

434. (42 U.S.C. § 1983)

435. Defendants acted under color of state law at all times relevant to this Count.

436. Plaintiff was seized within the meaning of the Fourth Amendment when Defendants caused or effectuated a civil mental-health detention.

437.    The seizure was not supported by probable cause to believe that Plaintiff posed an
imminent danger to self or others or otherwise satisfied the constitutional prerequisites
for civil commitment.

438.    Defendants relied on speech, complaints, or nonviolent conduct, rather than objective
indicia of imminent risk, to justify the seizure.

439.    The absence of probable cause was apparent from the facts known at the time of the
seizure and was not dependent on hindsight or post-hoc reassessment.

440.    The asserted justification for the detention rested on subjective interpretations of
protected expression or complaint activity rather than on objective, articulable facts
establishing probable cause of imminent danger as required by the Fourth Amendment.

441.    The seizure was unreasonable in scope, manner, and justification under the totality of
the circumstances.

442.    As a direct and proximate result of Defendants' unreasonable seizure, Plaintiff
suffered deprivation of Fourth Amendment rights and resulting harms.


**COUNT XXII**

443.    (Fourth Amendment – Seizure Without Probable Cause)

444.    (42 U.S.C. § 1983)

445.    This Count does not challenge Defendants' authority to conduct welfare checks or
emergency aid functions, but alleges the absence of probable cause required for civil

mental-health detention and the resulting unreasonable seizure under the Fourth Amendment.

446. Defendants acted under color of state law at all times relevant to this Count.

447. Plaintiff was seized within the meaning of the Fourth Amendment.

448. At the time of the seizure, Defendants lacked probable cause to believe that Plaintiff had committed, was committing, or was about to commit a crime, or that Plaintiff otherwise satisfied constitutionally sufficient grounds for seizure.

449. This Count addresses Defendants' seizure of Plaintiff outside the civil mental-health commitment framework, including investigatory or custodial detention unsupported by probable cause under any criminal or non-criminal Fourth Amendment standard.

450. The seizure was effectuated in the absence of objective, articulable facts sufficient to establish probable cause under any recognized Fourth Amendment standard, rendering the detention unlawful as a matter of law even assuming Defendants' characterization of the underlying circumstances.

451. The absence of probable cause was apparent based solely on the facts known to Defendants at the moment the seizure was initiated and did not depend on hindsight, subsequent events, or post-hoc justification.

452. The seizure was therefore unreasonable and unlawful under the Fourth Amendment.

453. As a direct and proximate result of Defendants' seizure without probable cause, Plaintiff suffered deprivation of Fourth Amendment rights and resulting harms.

## COUNT XXIII

454.   (Fourth Amendment – Excessive Government Intrusion)

455.   (42 U.S.C. § 1983)

456.   Defendants acted under color of state law at all times relevant to this Count.

457.   Plaintiff was subjected to a governmental intrusion within the meaning of the Fourth
Amendment.

458.   As a result of Defendants' use of governmental authority to impose an intrusive
course of conduct in scope and manner exceeding what was objectively reasonable,
Plaintiff was deprived of her Fourth Amendment right to be free from excessive
governmental intrusion.

459.   The intrusion challenged herein is not predicated on the mere existence of
governmental concern or discretionary caretaking authority, but on the scope and manner
of the intrusion employed. Even where some governmental interest is asserted, the Fourth
Amendment requires that any intrusion be objectively reasonable in scope and executed
using the least intrusive means reasonably available under the circumstances.

460.   The scope, manner, and degree of the intrusion were excessive and disproportionate to
any legitimate governmental interest asserted or reasonably present at the time.

461.   The excessive intrusion arose from Defendants' use of governmental authority to
impose measures that were not narrowly tailored to the circumstances presented and that
exceeded the least intrusive means reasonably available to address any legitimate
governmental objective.

462.   The excessive nature of the intrusion is evaluated under an objective reasonableness standard based on the information available to Defendants at the time.

463.   Based on the information known to Defendants at the time the intrusion was undertaken, and without reliance on hindsight or post-hoc justification, the scope and manner of the intrusion exceeded what was objectively reasonable and directly caused the deprivation alleged herein.

464.   Defendants employed intrusive measures that exceeded what was objectively reasonable under the circumstances, including measures more severe than necessary to address any purported concern.

465.   This Count challenges the excessiveness of the scope and manner of Defendants' conduct independent of whether any seizure occurred or was justified, and addresses the constitutional limits on how governmental authority may be exercised once invoked.

466.   As a direct and proximate result of Defendants' excessive intrusion, Plaintiff suffered deprivation of Fourth Amendment rights and resulting harms.

## COUNT XXIV

467.   (Fourth Amendment – Prolonged or Unjustified Detention)

468.   (42 U.S.C. § 1983)

469.   Defendants acted under color of state law at all times relevant to this Count.

470.   Plaintiff was detained within the meaning of the Fourth Amendment.

471.  The duration of Plaintiff's detention exceeded the time reasonably necessary to effectuate any legitimate governmental purpose asserted or reasonably present at the time.

472.  As a result of Defendants' continued detention of Plaintiff without timely reassessment or termination once any initial justification dissipated, Plaintiff was deprived of her Fourth Amendment right to be free from unreasonable and prolonged restraint.

473.  The continued detention followed Defendants' execution of custody based on asserted legal authority, without contemporaneous verification, disclosure, or procedural confirmation sufficient to ensure that continued restraint remained constitutionally justified under the Fourth Amendment.

474.  Defendants failed to promptly reassess the justification for continued detention, failed to terminate the detention once its initial basis dissipated or was satisfied, and failed to employ less restrictive means when continued detention was no longer objectively reasonable.

475.  As a direct and proximate result of Defendants' prolonged or unjustified detention, Plaintiff suffered deprivation of Fourth Amendment rights and resulting harms.

## COUNT XXV

476.  (Fourth Amendment – Fabrication or Exaggeration to Justify Seizure)

477.  (42 U.S.C. § 1983)

478.    Defendants acted under color of state law at all times relevant to this Count.

479.    Defendants caused Plaintiff to be seized within the meaning of the Fourth
Amendment.

480.    In support of that seizure, Defendants fabricated, exaggerated, or materially
mischaracterized information, or omitted material facts, in reports, petitions, or
communications upon which authorization or continuation of the seizure was based.

481.    The fabricated or exaggerated statements, omissions, or mischaracterizations were
material to the determination that Plaintiff should be seized and would have affected a
reasonable decisionmaker's assessment of justification for seizure.

482.    As a result of Defendants' fabrication, exaggeration, or omission of material
information used to justify or continue the seizure, Plaintiff was deprived of her Fourth
Amendment right to be free from unreasonable seizure.

483.    The seizure was effectuated or maintained through the presentation of information
purported to justify detention that, when material omissions, exaggerations, or distortions
are accounted for, failed to satisfy the objective requirements necessary to establish
lawful justification under the Fourth Amendment.

484.    When the fabricated, exaggerated, or omitted information is removed from
consideration, the remaining facts known to Defendants were insufficient to establish
lawful justification for seizure under the Fourth Amendment.

Verified Complaint for Declaratory Injunctive and Monetary Relief

485.   This Count does not allege mere negligence, mistake, or subjective misjudgment, but alleges the knowing or reckless presentation of materially false or misleading information that directly caused an unreasonable seizure.

486.   As a direct and proximate result of Defendants' fabrication or exaggeration, Plaintiff was subjected to an unreasonable seizure in violation of the Fourth Amendment and suffered resulting harms.

## COUNT XXVI

487.   42 U.S.C. § 1983 – Stigma-Plus Deprivation of Liberty

488.   (Against Defendant City of Scottsdale)

489.   The Fourteenth Amendment to the United States Constitution prohibits the State from stigmatizing an individual in connection with the deprivation of liberty or other tangible interests without due process of law.

490.   At all relevant times, Defendant City of Scottsdale, acting under color of state law through its officers, agents, employees, policies, customs, and practices, subjected Plaintiff to stigmatizing classifications, characterizations, or designations that impugned Plaintiff's reputation and standing.

491.   The stigmatizing actions were directly coupled with, and resulted in, the alteration and deprivation of Plaintiff's liberty interests and legal status, including the loss or impairment of access to governmental protection, services, remedies, or procedural safeguards, and the imposition of coercive or restrictive state action.

492.   As a result of Defendant City of Scottsdale's stigmatizing classifications and
characterizations imposed through official records, designations, or administrative
treatment, Plaintiff was deprived of constitutionally protected liberty interests, including
altered legal status and restricted access to governmental protection, services, and
procedural safeguards.

493.   The stigma-plus deprivation was effected through the use of governmental authority
and occurred independently of, and in addition to, any other constitutional violations
alleged, thereby constituting a distinct due process injury.

494.   Defendant City's stigmatizing conduct and the accompanying deprivation of liberty
were undertaken pursuant to official policies, customs, practices, or a pattern of
deliberate indifference to the constitutional rights of individuals so affected, including
through the ratification, enforcement, or acquiescence of final policymakers.

495.   The stigma and associated deprivation of liberty occurred without adequate notice,
without a meaningful opportunity to be heard, and without any constitutionally sufficient
pre- or post-deprivation process.

496.   As a direct and proximate result of Defendant City of Scottsdale's stigma-plus
violations, Plaintiff suffered constitutional injury, including reputational harm, loss of
liberty interests, emotional distress, and other compensable damages.

497.   The alteration of Plaintiff's legal status and liberty interests constituted a concrete
change in governmental treatment and eligibility for protection and services, not merely
reputational harm.

498.    This Count does not allege reputational injury alone or a defamation-based claim, but alleges that Defendant City of Scottsdale's stigmatizing governmental classifications themselves operated to alter Plaintiff's legal status and access to governmental protection and processes, thereby constituting a stigma-plus deprivation of liberty under the Fourteenth Amendment.

499.    Defendant City of Scottsdale is liable under 42 U.S.C. § 1983 for violating Plaintiff's Fourteenth Amendment rights under the stigma-plus doctrine, and such violations were a moving force behind the injuries suffered by Plaintiff.

## COUNT XXVII

500.    (First Amendment – Retaliation for Petitioning Government)

501.    (42 U.S.C. § 1983)

502.    Defendants acted under color of state law at all times relevant to this Count.

503.    Plaintiff engaged in activity protected by the First Amendment, including petitioning government officials and agencies for redress of grievances.

504.    Defendants took adverse actions against Plaintiff that would chill a person of ordinary firmness from continuing to petition the government.

505.    Plaintiff's protected petitioning activity was a substantial or motivating factor for Defendants' adverse actions.

506.   As a result of Defendants' use of official governmental authority and processes in response to Plaintiff's petitioning activity, Plaintiff was deprived of her First Amendment right to petition the government free from retaliation.

507.   The retaliatory conduct included the invocation or use of governmental processes and authority in a manner that escalated consequences or imposed burdens on Plaintiff's petitioning activity beyond what would have occurred in the absence of such protected activity.

508.   After Defendants had actual notice of Plaintiff's protected petitioning activity, Defendants continued to invoke governmental authority in a manner that escalated consequences and imposed burdens on Plaintiff's petitioning activity, which directly resulted in the deprivation alleged herein.

509.   Defendants' actions were not narrowly tailored to serve a legitimate governmental interest and would not have occurred absent Plaintiff's protected activity.

510.   This Count does not challenge neutral law enforcement or discretionary regulatory action, but alleges Defendants' use of governmental authority as a retaliatory mechanism to penalize and deter protected petitioning activity.

511.   As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff suffered deprivation of constitutional rights and resulting harms.

512.   The moving force behind the retaliation alleged in this Count was Defendants' method of administering governmental processes in a manner that escalated adverse

consequences in response to protected petitioning activity, operating as an established practice after notice.

## COUNT XXVIII

513.   (First Amendment – Retaliation for Civil-Rights Advocacy)

514.   (42 U.S.C. § 1983)

515.   Defendants acted under color of state law at all times relevant to this Count.

516.   Plaintiff engaged in activity protected by the First Amendment by advocating for civil rights, including asserting rights secured by federal disability and constitutional law and objecting to discriminatory or unlawful governmental practices.

517.   Defendants took adverse actions against Plaintiff that would deter a person of ordinary firmness from continuing to engage in civil-rights advocacy or protected speech.

518.   Plaintiff's civil-rights advocacy and protected speech were a substantial or motivating factor in Defendants' adverse actions.

519.   The adverse actions included the use or deployment of governmental processes, authority, or enforcement mechanisms in a manner that imposed penalties, burdens, or escalated consequences tied to Plaintiff's civil-rights advocacy.

520.   As a result of Defendants' use of governmental authority and processes in response to Plaintiff's civil-rights advocacy, Plaintiff was deprived of her First Amendment right to engage in protected speech and advocacy free from retaliation.

521. After Defendants had actual notice of Plaintiff's civil-rights advocacy and protected speech, Defendants continued to deploy governmental authority and processes in a manner that escalated burdens and adverse consequences, which directly resulted in the deprivation alleged herein.

522. This Count does not challenge disagreement with Plaintiff's views or the lawful exercise of governmental discretion, but alleges Defendants' retaliatory use of governmental authority to penalize and deter protected civil-rights advocacy in violation of the First Amendment.

523. The moving force behind the retaliation alleged in this Count was Defendants' method of administering governmental processes in a manner that escalated adverse consequences in response to protected civil-rights advocacy, operating as an established practice after notice.

524. Defendants' retaliatory conduct was not narrowly tailored to, nor reasonably related to, any legitimate governmental interest and would not have occurred absent Plaintiff's protected advocacy.

525. As a direct and proximate result of Defendants' retaliatory actions, Plaintiff suffered deprivation of constitutional rights and resulting harms.

## COUNT XXIX

526. (First Amendment – Retaliatory Use of Mental-Health Mechanisms)

527. (42 U.S.C. § 1983)

528.  Defendants acted under color of state law at all times relevant to this Count.

529.  Plaintiff engaged in activity protected by the First Amendment, including reporting misconduct, asserting civil-rights protections, and advocating for compliance with federal law.

530.  Defendants invoked, initiated, or relied upon mental-health processes or mechanisms against Plaintiff as an adverse governmental action.

531.  The use of mental-health mechanisms constituted adverse action that would deter a person of ordinary firmness from continuing to engage in protected speech or civil-rights advocacy.

532.  Plaintiff's protected activity was a substantial or motivating factor in Defendants' decision to employ mental-health mechanisms, rather than neutral or non-punitive administrative responses.

533.  The retaliatory use of mental-health mechanisms involved the application of state authority in a manner that recharacterized protected speech or advocacy as a basis for intervention, rather than addressing such activity through content-neutral, proportionate, and lawful governmental processes.

534.  Defendants' actions were objectively unreasonable, bore no reasonable relationship to any legitimate governmental interest, and suppressed, chilled, or punished protected expression.

535.  The use of mental-health mechanisms in this context suppresses, chills, or punishes protected expression, regardless of Defendants' stated justifications.

536.    As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff suffered deprivation of First Amendment rights and resulting harms.

537.    As a result of Defendants' invocation and use of mental-health mechanisms in response to Plaintiff's protected speech and civil-rights advocacy, Plaintiff was deprived of her First Amendment right to engage in protected expression free from retaliation.

538.    After Defendants had actual notice of Plaintiff's protected reporting, civil-rights assertions, and advocacy activity, Defendants nevertheless continued to invoke and rely upon mental-health mechanisms against Plaintiff, which directly resulted in the chilling and punishment of Plaintiff's protected expression.

539.    This Count does not allege the good-faith use of mental-health processes for legitimate caretaking or protective purposes, but instead alleges the retaliatory deployment of such mechanisms as an instrument of state authority to suppress, chill, or punish protected First Amendment activity.

540.    The moving force behind the retaliation alleged in this Count was Defendants' method of administering mental-health mechanisms as a response to protected speech and civil-rights advocacy, operating as an established governmental practice after notice.

## COUNT XXX

541.    (First Amendment – Chilling Effect on Protected Speech)

542.    (42 U.S.C. § 1983)

543.    Defendants acted under color of state law at all times relevant to this Count.

544.  Plaintiff engaged in speech and expressive conduct protected by the First
Amendment, including reporting misconduct, seeking enforcement of the law, and
asserting civil-rights protections.

545.  Defendants' actions and omissions, including the use of coercive governmental
mechanisms and the failure to provide lawful, neutral responses to Plaintiff's protected
activity, created a credible threat of adverse consequences for continued speech.

546.  The chilling effect arose from Defendants' use of state authority and official processes
in a manner that made continued speech or petitioning reasonably appear to carry a risk
of adverse governmental consequences, even in the absence of any lawful or neutral basis
for such consequences.

547.  Defendants' conduct would chill or deter a person of ordinary firmness from engaging
in protected speech, reporting misconduct, or petitioning the government for redress.

548.  As a result of Defendants' conduct, Plaintiff's exercise of First Amendment rights
was chilled, inhibited, or constrained.

549.  Defendants' actions lacked a reasonable relationship to any legitimate governmental
objective and operated to suppress or discourage protected expression.

550.  As a direct and proximate result of Defendants' conduct, Plaintiff suffered deprivation
of First Amendment rights and resulting harms.

551.  As a result of Defendants' use of coercive governmental mechanisms and official
processes in response to Plaintiff's protected speech, Plaintiff was deprived of her First

Amendment right to engage in protected expression without fear of adverse governmental consequences.

552. After Defendants had actual notice of Plaintiff's protected speech, reporting, and petitioning activity, Defendants nevertheless continued to employ governmental authority and coercive processes in a manner that foreseeably chilled, inhibited, and constrained Plaintiff's exercise of First Amendment rights.

553. This Count does not allege a failure to protect, a subjective fear untethered to state action, or an entitlement to any particular governmental response, but instead alleges the chilling and suppression of protected speech through Defendants' use of governmental authority and official processes.

554. The moving force behind the chilling effect alleged in this Count was Defendants' method of administering governmental processes in response to protected speech in a manner that created a credible threat of adverse consequences, operating as an established practice after notice.

**COUNT XXXI**

555. 42 U.S.C. § 1983 – First Amendment Retaliation

556. (Against Defendant City of Scottsdale)

557. At all relevant times, Plaintiff engaged in activity protected by the First Amendment to the United States Constitution, including reporting misconduct, seeking governmental

assistance, petitioning for redress of grievances, and pursuing access to legal and administrative remedies.

558.   Defendant City of Scottsdale, acting under color of state law through its officers, agents, employees, policies, customs, and practices, took adverse actions against Plaintiff after and because of Plaintiff's protected activity. The adverse actions followed Plaintiff's protected activity in close temporal proximity and were of a type reasonably expected to deter protected expression.

559.   The adverse actions included, inter alia, the misuse of governmental processes, the redirection or obstruction of Plaintiff's access to services and remedies, the imposition of coercive or punitive administrative responses, and the creation or enforcement of barriers that would deter a person of ordinary firmness from continuing to engage in protected First Amendment activity.

560.   Defendants' actions were reasonably likely to, and did in fact, chill or burden Plaintiff's exercise of First Amendment rights, including Plaintiff's ability to report misconduct, seek protection, and pursue redress through lawful channels.

561.   Defendant City's retaliatory conduct was not narrowly tailored to serve a legitimate governmental interest and was undertaken pursuant to official policies, customs, practices, or a pattern of deliberate indifference to the constitutional rights of individuals who engage in protected activity, including through the ratification, enforcement, or acquiescence of final policymakers.

562.   As a direct and proximate result of Defendant City of Scottsdale's retaliatory actions, Plaintiff suffered constitutional injury, including the loss or impairment of First Amendment rights, emotional distress, and other compensable harms.

563.   Defendant City of Scottsdale is liable under 42 U.S.C. § 1983 for the violation of Plaintiff's First Amendment rights, and such violation was a moving force behind the injuries suffered by Plaintiff.

## COUNT XXXII

564.   42 U.S.C. § 1983 – Denial of Access to Courts

565.   (Against Defendant City of Scottsdale)

566.   The First and Fourteenth Amendments to the United States Constitution guarantee individuals a meaningful and effective right of access to the courts and to available legal remedies, including the ability to pursue nonfrivolous claims without unreasonable governmental obstruction.

567.   At all relevant times, Defendant City of Scottsdale, acting under color of state law through its officers, agents, employees, policies, customs, and practices, engaged in conduct that obstructed, delayed, burdened, or interfered with Plaintiff's ability to pursue legal and administrative remedies.

568.   As a result of Defendant City of Scottsdale's obstruction, delay, and misuse of governmental procedures governing records, intake, routing, and administrative

processing, Plaintiff was deprived of her constitutionally protected right to meaningful and effective access to the courts and to available legal remedies.

569.   Defendant City's obstructive conduct included the misuse of governmental processes, the withholding, delaying, misrouting, or weaponization of records and procedures, and the creation or enforcement of barriers that foreseeably hindered Plaintiff's ability to seek timely and effective judicial or administrative relief.

570.   The obstructive conduct was not merely incidental or negligent, but operated to materially frustrate, impair, and in some instances render ineffective Plaintiff's pursuit of nonfrivolous legal claims and remedies, including claims seeking protection, enforcement, review, or redress for constitutional and statutory violations.

571.   The legal claims impaired by Defendant City's obstructive conduct were nonfrivolous and sought relief for constitutional and statutory violations.

572.   Defendant City's actions caused actual injury to Plaintiff by depriving Plaintiff of meaningful access to adjudicatory forums, foreclosing timely consideration of claims, impairing the ability to present information or evidence, and undermining the practical availability and effectiveness of legal remedies.

573.   This denial of access constitutes both a backward-looking injury, in that specific opportunities to obtain judicial or administrative relief were lost or irreparably compromised, and a forward-looking injury, in that Defendant City's practices created ongoing barriers that continue to obstruct Plaintiff's ability to seek redress.

574.    After Defendant City of Scottsdale had actual notice that its practices were obstructing and impairing Plaintiff's ability to pursue nonfrivolous legal and administrative claims, the City continued to engage in the same obstructive practices, which foreseeably resulted in the ongoing loss, impairment, and frustration of Plaintiff's access to adjudicatory forums and remedies.

575.    This Count does not allege dissatisfaction with discretionary decision-making, administrative inefficiency, or delay in the abstract, but instead alleges Defendant City of Scottsdale's obstruction and misuse of mandatory procedural mechanisms in a manner that materially foreclosed, impaired, and rendered ineffective Plaintiff's meaningful access to adjudicatory forums and legal remedies.

576.    The denial of access to courts was undertaken pursuant to official policies, customs, practices, or a pattern of deliberate indifference to the constitutional rights of individuals seeking redress, including through the ratification, enforcement, or acquiescence of officials with final policymaking authority.

577.    As a direct and proximate result of Defendant City of Scottsdale's denial of access to courts, Plaintiff suffered constitutional injury and other compensable harms.

578.    Defendant City of Scottsdale is liable under 42 U.S.C. § 1983 for violating Plaintiff's constitutional right of access to the courts, and such violations were a moving force behind the injuries suffered by Plaintiff.

## COUNT XXXIII

579.   (Equal Protection – Selective Non-Enforcement)

580.   (42 U.S.C. § 1983)

581.   Defendants acted under color of state law at all times relevant to this Count.

582.   Plaintiff was entitled to equal protection of the laws, including equal access to law-
        enforcement protection and enforcement of mandatory legal duties.

583.   Defendants selectively declined to enforce the law and provide protective services in
        circumstances where enforcement and protection were otherwise required, while
        providing such enforcement and protection to similarly situated individuals.

584.   As a result of Defendants' selective refusal to carry out mandatory, non-discretionary
        enforcement obligations applicable under the same legal standards, Plaintiff was deprived
        of equal protection of the laws through differential treatment as compared to similarly
        situated individuals who received enforcement and protection.

585.   Plaintiff was similarly situated in all material respects to individuals who received
        enforcement and protection under the same mandatory legal standards.

586.   The selective non-enforcement arose from Defendants' failure to carry out non-
        discretionary, mandatory enforcement obligations under governing law and policy,
        without any objective or lawful basis for distinguishing Plaintiff from other similarly
        situated persons entitled to enforcement and protection.

587.   Defendants' selective non-enforcement lacked a rational basis and was inconsistent
        with neutral law-enforcement standards and mandatory enforcement schemes.

588. Defendants' conduct resulted in Plaintiff being treated differently from other similarly situated persons without lawful justification.

589. This Count does not challenge discretionary law-enforcement judgment or prioritization, but instead alleges selective non-enforcement of mandatory legal duties in circumstances where enforcement was required and provided to similarly situated individuals, resulting in unequal treatment without lawful justification.

590. After Defendants had actual notice that Plaintiff was similarly situated in all material respects to individuals who received enforcement and protection under the same mandatory legal standards, Defendants nevertheless continued to decline enforcement and protective action as to Plaintiff, which directly resulted in the unequal treatment and deprivation alleged herein.

591. As a direct and proximate result of Defendants' selective non-enforcement, Plaintiff was denied equal protection of the laws and suffered resulting harms.


## COUNT XXXIV

592. (Equal Protection – Disability-Based Differential Treatment)

593. (42 U.S.C. § 1983)

594. Defendants acted under color of state law at all times relevant to this Count.

595. Plaintiff was entitled to equal protection of the laws, including equal treatment by law enforcement without discrimination based on actual or perceived disability.

596.    Defendants treated Plaintiff differently from similarly situated individuals based on Plaintiff's actual or perceived mental disability, including by subjecting Plaintiff to adverse treatment, heightened scrutiny, and differential enforcement practices.

597.    The differential treatment arose from Defendants' application of law-enforcement authority in a manner that classified or treated Plaintiff as materially different based on actual or perceived disability, rather than on objective, disability-neutral criteria applied to similarly situated individuals.

598.    As a result of Defendants' application of law-enforcement authority to Plaintiff based on actual or perceived disability rather than disability-neutral criteria applied to similarly situated individuals, Plaintiff was deprived of her right to equal protection of the laws.

599.    Defendants' disability-based differential treatment was not rationally related to a legitimate governmental interest and departed from neutral law-enforcement standards and practices.

600.    After Defendants had actual notice of Plaintiff's disability and of the discriminatory impact of treating Plaintiff as materially different on that basis, Defendants nevertheless continued to apply law-enforcement authority to Plaintiff in a differential manner, which directly resulted in the unequal treatment alleged herein.

601.    Defendants' conduct resulted in Plaintiff being singled out for adverse treatment and denied equal protection of the laws on the basis of disability.

602.    This Count does not challenge discretionary caretaking decisions or neutral safety assessments, but instead alleges disability-based classification and differential treatment

that departed from neutral law-enforcement standards and denied Plaintiff equal protection of the laws.

603.    As a direct and proximate result of Defendants' disability-based differential treatment, Plaintiff was deprived of equal protection of the laws and suffered resulting harms.

## COUNT XXXV

604.    (Equal Protection – Sex-Based Differential Treatment in Domestic-Violence Enforcement)

605.    (42 U.S.C. § 1983)

606.    Defendants acted under color of state law at all times relevant to this Count.

607.    Plaintiff was entitled to equal protection of the laws, including nondiscriminatory enforcement of domestic-violence laws without differential treatment based on sex.

608.    Defendants treated Plaintiff differently from similarly situated individuals on the basis of sex in the investigation, enforcement, and administration of domestic-violence protections, including by declining to provide equal protection and enforcement afforded to other victims.

609.    Defendants' conduct reflected the application of sex-based stereotypes regarding emotional response, credibility, and perceived stability, resulting in differential treatment not imposed on similarly situated individuals.

610.   Such differential treatment manifested through departures from neutral enforcement procedures and mandatory domestic-violence response standards applied to similarly situated victims.

611.   The sex-based differential treatment arose from Defendants' application of domestic-violence enforcement authority in a manner that classified or treated Plaintiff differently based on sex, rather than applying neutral, sex-independent criteria and mandatory enforcement standards to similarly situated victims.

612.   As a result of Defendants' application of domestic-violence enforcement authority to Plaintiff on the basis of sex rather than neutral, sex-independent criteria applied to similarly situated victims, Plaintiff was deprived of her right to equal protection of the laws.

613.   Defendants' sex-based differential treatment departed from neutral law-enforcement standards and practices and was not substantially related to an important governmental interest.

614.   After Defendants had actual notice that Plaintiff was being treated differently on the basis of sex in the administration and enforcement of domestic-violence protections, Defendants nevertheless continued to apply differential enforcement practices, which directly resulted in the deprivation alleged herein.

615.   This Count does not challenge discretionary law-enforcement judgment or prioritization, but instead alleges sex-based classification and differential treatment in the

enforcement of mandatory domestic-violence protections, resulting in unequal protection without lawful justification.

616.    Defendants' conduct resulted in Plaintiff being denied equal protection of the laws on the basis of sex.

617.    As a direct and proximate result of Defendants' sex-based differential treatment, Plaintiff was deprived of equal protection of the laws and suffered resulting harms.

## COUNT XXXVI

618.    (Monell – Policy or Custom of Non-Enforcement)

619.    (42 U.S.C. § 1983)

620.    Plaintiff realleges and incorporates by reference the Monell allegations and the Global Tolling and Chilling of Remedies allegations, to the extent applicable, pleaded in this Complaint.

621.    Defendant City is a municipality and a person subject to liability under 42 U.S.C. § 1983.

622.    At all times relevant to this Count, Defendant maintained and enforced policies, customs, or practices regarding the investigation and enforcement of domestic-violence offenses and protective orders.

623.    Defendant had a policy, custom, or widespread practice of non-enforcement of protective orders and domestic-violence laws, including failure to make arrests or take mandatory enforcement action when legal predicates were met.

624.   This custom or practice was evidenced by repeated failures to enforce protective

orders and domestic-violence laws following notice, rather than by a single isolated

incident.

625.   This policy or custom arose from repeated conduct and functioned as standard

operating procedure rather than an isolated or accidental occurrence.

626.   This Count does not challenge isolated discretionary enforcement decisions or

dissatisfaction with particular outcomes, but alleges a municipal policy and method of

administration that systematically displaced mandatory domestic-violence enforcement

obligations, resulting in predictable and repeated constitutional deprivations.

627.   The policy or custom of non-enforcement operated through Defendant City's methods

of investigation intake, enforcement decision-making, and arrest authorization, which

functioned to foreclose or bypass mandatory enforcement triggers required under

governing domestic-violence and protective-order laws.

628.   Defendant's policymakers knew or should have known of this policy or custom and

the substantial risk of constitutional injury it posed yet failed to take corrective action.

629.   Defendant's policy or custom of non-enforcement, implemented through its methods

of administering domestic-violence investigations and enforcement decisions, was the

moving force behind the deprivation of Plaintiff's constitutional rights, including denial

of equal protection and due process and exposure to continued harm.

630.   As a direct and proximate result of Defendant's policy or custom of non-enforcement,

Plaintiff suffered constitutional injuries and resulting damages.

631.    These repeated failures occurred across multiple reported incidents pleaded in this
Complaint, involving the same abuser and similar non-enforcement conduct following
notice, as set forth in the Factual Allegations.

## COUNT XXXVII

632.    (Monell – Policy or Custom of Disability-Based Escalation)

633.    (42 U.S.C. § 1983)

634.    Plaintiff realleges and incorporates by reference the Monell allegations and the Global
Tolling and Chilling of Remedies allegations, to the extent applicable, pleaded in this
Complaint.

635.    Defendant City is a municipality and a person subject to liability under 42 U.S.C. §
1983.

636.    At all times relevant to this Count, Defendant maintained and enforced policies,
customs, or practices governing interactions with individuals perceived to have mental or
psychological disabilities.

637.    Defendant had a policy, custom, or widespread practice of escalating interactions with
disabled or perceived-to-be-disabled individuals through adverse governmental actions,
including diversion to mental-health mechanisms, heightened enforcement responses, or
other punitive measures, rather than providing lawful services or accommodations.

638.    This policy or custom included the use of disability-based escalation as a response to complaints, advocacy, or requests for assistance, resulting in differential treatment of disabled individuals compared to non-disabled individuals.

639.    The disability-based escalation practice was implemented through official decision-making channels, training, supervision, or ratification mechanisms, such that the conduct reflected municipal policy rather than isolated or unauthorized acts of individual employees.

640.    Defendant's policymakers knew or should have known that such disability-based escalation posed a substantial risk of constitutional and statutory injury, yet failed to prevent, correct, or remedy the practice.

641.    Defendant's policy or custom of disability-based escalation was the moving force behind violations of Plaintiff's rights under the Constitution and federal law, including rights secured by the First, Fourth, and Fourteenth Amendments.

642.    This Count does not challenge the good-faith provision of emergency mental-health services, lawful caretaking functions, or disability-neutral safety interventions, but instead alleges a municipal policy and method of administration that escalated disabled or perceived-to-be-disabled individuals into adverse governmental action as a response to advocacy, complaints, or requests for assistance, rather than through neutral, proportionate, and lawful processes.

643.    After Defendant City had actual notice of the discriminatory and constitutionally injurious effects of its disability-based escalation practices, including as applied to

Verified Complaint for Declaratory Injunctive and Monetary Relief

Plaintiff, the City nevertheless continued to administer those practices through the same decision-making channels, which directly resulted in the violations and injuries alleged herein.

644. As a direct and proximate result of Defendant's policy or custom, Plaintiff suffered constitutional injuries and resulting damages.


**COUNT XXXVIII**

645. (Monell – Failure to Train: ADA Compliance and Crisis-Response Obligations)

646. (42 U.S.C. § 1983)

647. Plaintiff realleges and incorporates by reference the Monell allegations and the Global Tolling and Chilling of Remedies allegations, to the extent applicable, pleaded in this Complaint.

648. Defendant City is a municipality and a person subject to liability under 42 U.S.C. § 1983.

649. At all times relevant to this Count, Defendant was responsible for training law-enforcement officers, supervisors, and agents regarding interactions with individuals with disabilities and responses to crisis situations implicating constitutional and statutory rights.

650. Defendant failed to provide adequate training on compliance with Title II of the Americans with Disabilities Act, including the duty to provide reasonable modifications,

effective communication, and non-discriminatory law-enforcement services to individuals with actual or perceived disabilities.

651. Defendant further failed to provide adequate training on lawful crisis-response obligations, including the assessment of risk, the use of the least intrusive means consistent with public safety, and the avoidance of disability-based escalation in lieu of lawful services or accommodations.

652. The need for such training was obvious. Interactions with disabled individuals and crisis-response situations were recurring and predictable, and the absence of adequate training created a highly foreseeable risk that constitutional and statutory violations would occur.

653. This obviousness arose from recurring interactions between law-enforcement officers and individuals with disabilities in circumstances implicating constitutional and statutory obligations.

654. The obvious need for training arose from the intersection of mandatory ADA obligations, routine law-enforcement encounters with disabled individuals, and the constitutional constraints governing crisis-response and seizure authority, such that the absence of adequate training predictably resulted in rights violations.

655. Defendant's policymakers knew or should have known that officers would confront situations requiring ADA-compliant responses and constitutionally sound crisis intervention yet deliberately failed to implement adequate training or corrective measures.

656.    Defendant's failure to train amounted to deliberate indifference to the rights of persons with disabilities and those subjected to crisis-response actions.

657.    Defendant's failure to train was the moving force behind violations of Plaintiff's rights under the Constitution and federal law, including rights secured by the First, Fourth, and Fourteenth Amendments.

658.    As a direct and proximate result of Defendant's failure to train, Plaintiff suffered constitutional injuries and resulting damages.

## COUNT XXXIX

659.    (Monell – Ratification Through Reports, Petitions, and Internal-Affairs Handling)

660.    (42 U.S.C. § 1983)

661.    Plaintiff realleges and incorporates by reference the Monell allegations and the Global Tolling and Chilling of Remedies allegations, to the extent applicable, pleaded in this Complaint.

662.    Defendant City is a municipality and a person subject to liability under 42 U.S.C. § 1983.

663.    At all times relevant to this Count, Defendant maintained supervisory, internal-affairs, and administrative review processes with authority to approve, disapprove, correct, or discipline law-enforcement conduct.

664.  Following the conduct described herein, Defendant's supervisors and reviewing officials received and reviewed officer reports, petitions, and related documentation reflecting the actions taken against Plaintiff.

665.  Following the conduct described herein, Plaintiff directed reports, petitions, and requests for corrective action through multiple supervisory and executive channels within the City, including law enforcement command staff, internal-affairs authorities, and senior municipal officials vested with oversight responsibility, all of whom possessed the authority to initiate review, corrective action, or discipline and failed to do so.

666.  Defendant's policymakers and supervisory officials, having actual or constructive knowledge of the material facts, approved, accepted, or failed to correct the challenged conduct through express approval, failure to discipline, or administrative inaction.

667.  Defendant further ratified the challenged conduct through internal affairs handling that declined to impose corrective action, issue remedial findings, or modify practices, thereby signaling institutional approval of the conduct at issue.

668.  The reports, petitions, and internal-affairs materials reviewed by Defendant's supervisory and policymaking officials were sufficient to place those officials on notice not only of the underlying facts, but of the constitutional deficiencies and unlawful nature of the conduct at issue.

669.  Defendant also ratified the conduct through administrative or prosecutorial acquiescence, including reliance on officer reports and petitions without correction, clarification, or remedial intervention.

670. Such approval and inaction, following a meaningful opportunity to intervene or correct, constituted ratification of the underlying conduct by officials with final policymaking authority.

671. The ratification occurred through decision-making channels vested with final authority over discipline, policy enforcement, and corrective action, such that the approval and inaction were attributable to the municipality itself rather than to subordinate discretionary judgment.

672. Defendant's ratification reflected a conscious, deliberate choice to endorse the conduct at issue and rendered that conduct the official policy of the municipality.

673. Defendant's ratification was the moving force behind the deprivation of Plaintiff's constitutional rights, including rights secured by the First, Fourth, and Fourteenth Amendments.

674. As a direct and proximate result of Defendant's ratification, Plaintiff suffered constitutional injuries and resulting damages.

**COUNT XL**

675. Monell Liability – Due Process Violations Arising from Charge Manipulation Without Notice or Procedural Safeguards

676. Plaintiff realleges and incorporates by reference the Monell allegations and the Global Tolling and Chilling of Remedies allegations, to the extent applicable, pleaded in this Complaint.

677.  Defendant City is a municipality and a person subject to liability under 42 U.S.C. §
      1983.

678.  At all relevant times, Plaintiff possessed clearly established constitutional rights under
      the Fourteenth Amendment to due process of law, including the right to fair notice,
      transparency, and basic procedural regularity in governmental actions affecting criminal
      charges and legal status.

679.  Defendant City, through its departments, agents, and policymakers, maintained
      customs, practices, and usages that permitted the unilateral alteration, downgrading,
      abandonment, or non-pursuit of criminal charges without notice to affected victims and
      without meaningful procedural safeguards.

680.  Although charging decisions involve discretion, the practices described above
      deprived Plaintiff of constitutionally required notice and a meaningful opportunity to be
      informed of, understand, and respond to material charge alterations affecting her legal
      interests.

681.  The due process violations alleged herein do not arise from disagreement with the
      substance of charging decisions, but from the absence of notice and procedural regularity
      accompanying material charge alterations. While prosecutorial discretion governs
      whether and how charges are pursued, it does not extinguish the requirement that affected
      individuals receive notice sufficient to understand material changes in case status that
      alter legal status, foreclose participation, or impair the ability to seek timely review,
      protection, or redress.

682.   The charge-manipulation practices operated through administrative and law-
enforcement processes that altered the legal status and trajectory of cases without
providing notice, explanation, or any opportunity for affected victims to be heard,
notwithstanding the predictable impact of such actions on liberty interests and legal
rights.

683.   In Plaintiff's case, these practices included representing that a reported aggravated
domestic-violence offense involving Plaintiff as the named victim had been classified and
submitted for felony processing, followed by the subsequent closure, downgrading, or
non-pursuit of the matter without notice to Plaintiff, without victim consultation, and
without any explanation sufficient to permit Plaintiff to understand or respond to the
change in case status. During this process, official records reflected statements attributed
to the alleged perpetrator regarding Plaintiff's mental health that were not verified with
Plaintiff, were not supported by any contemporaneous clinical determination, and were
recorded without affording Plaintiff an opportunity to review, correct, or contest their
inclusion before the charge trajectory was altered.

684.   These representations and subsequent charge alterations were communicated to
Plaintiff through official channels and records and formed the basis of Plaintiff's
understanding of the charge status at the time; Plaintiff learned of the closure and
downgrade only later through records review and confirmation from the City of
Scottsdale Prosecutor's Office.

685.    The incorporation of such unverified, stigmatizing characterizations into the case
record, coupled with the absence of notice and subsequent silent charge alteration,
operated to impair Plaintiff's ability to participate, seek protection, or pursue timely
review, and formed part of the opaque charge-handling practices challenged herein.

686.    Similar charge-alteration events occurred on multiple occasions during Plaintiff's
interactions with the City, in which matters represented or understood at the time to
involve felony-level charges were later discovered, without notice, explanation, or
procedural communication to Plaintiff to have been downgraded, closed, or otherwise
removed from felony status.

687.    These repeated occurrences were not confined to a single incident but reflected a
recurring practice in which material changes to charge status were effectuated without
informing the named victim, thereby foreclosing timely participation, review, or
response. The recurrence of such undisclosed charge alterations further demonstrates that
the conduct alleged herein was not isolated or accidental, but indicative of a systemic
custom or practice attributable to the municipality.

688.    These customs and practices were not isolated occurrences, but were sufficiently
widespread, persistent, and well-settled so as to constitute de facto municipal policy
attributable to the City for purposes of Monell liability.

689.    The charge-handling practices described herein operated to deprive Plaintiff of notice,
transparency, and a meaningful opportunity to understand, participate in, or respond to
governmental decisions affecting the disposition of serious criminal matters.

690. Defendant City, including its final policymakers and supervisory officials, had actual and constructive notice that such opaque charge-handling practices were occurring and posed a substantial risk of constitutional injury to victims, including Plaintiff.

691. Despite such notice, Defendant City failed to implement adequate policies, training, supervision, or procedural safeguards to ensure that charge alterations were accompanied by notice, explanation, or lawful process.

692. The City's failure to act in the face of known risks constituted deliberate indifference to the constitutional rights of Plaintiff and others similarly situated.

693. As a direct and proximate result of the City's customs, practices, and deliberate indifference, Plaintiff was deprived of due process of law and suffered foreseeable constitutional injury.

694. The unconstitutional customs and practices described herein were the moving force behind the violations of Plaintiff's constitutional rights.

695. Defendant City is therefore liable to Plaintiff for damages and appropriate equitable relief pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services.

**COUNT XLI**

696. Monell Liability – Due Process Violations Arising from Official Misinformation and Process Obfuscation

697.    Plaintiff realleges and incorporates by reference the Monell allegations and the Global
Tolling and Chilling of Remedies allegations, to the extent applicable, pleaded in this
Complaint.

698.    Defendant City is a municipality and a person subject to liability under 42 U.S.C. §
1983.

699.    At all relevant times, Plaintiff possessed clearly established constitutional rights under
the Fourteenth Amendment to due process of law, including the right to accurate
information and transparency sufficient to permit meaningful participation in
governmental processes affecting her legal interests.

700.    Defendant City, through its departments, agents, and policymakers, maintained
customs, practices, and usages that resulted in the provision of false, misleading,
inconsistent, or materially incomplete information regarding the status, handling, and
disposition of matters affecting Plaintiff.

701.    These customs and practices included, but were not limited to, providing explanations
that obscured or mischaracterized procedural status, decision-making authority, or the
routing and handling of matters, thereby impeding Plaintiff's ability to understand,
challenge, or meaningfully participate in governmental processes.

702.    As a result of Defendant City's provision of false, misleading, inconsistent, or
materially incomplete official information regarding the status and handling of matters
affecting Plaintiff, Plaintiff was deprived of her constitutionally protected right to due

process, including the ability to understand, respond to, challenge, or meaningfully

participate in governmental processes affecting her legal interests.

703.   The misinformation and obfuscation practices described herein were not isolated

incidents, but were sufficiently widespread, persistent, and well-settled so as to constitute

de facto municipal policy attributable to the City for purposes of Monell liability.

704.   Defendant City, including its final policymakers and supervisory officials, had actual

and constructive notice that such practices were occurring and posed a substantial risk of

constitutional injury by depriving affected individuals of meaningful access to

information necessary for due process.

705.   Despite such notice, Defendant City failed to implement corrective measures,

training, supervision, or safeguards to ensure the accuracy, consistency, and transparency

of official communications affecting Plaintiff's rights.

706.   The City's failure to act in the face of known risks constituted deliberate indifference

to the constitutional rights of Plaintiff and others similarly situated.

707.   As a direct and proximate result of the City's customs, practices, and deliberate

indifference, Plaintiff was deprived of due process of law and suffered foreseeable

constitutional injury.

708.   This Count does not allege mere misunderstanding, negligence, or dissatisfaction with

governmental explanations, but instead alleges a municipal custom and method of

administration that affirmatively deprived Plaintiff of constitutionally required procedural

transparency and accurate information necessary to exercise due process rights.

Verified Complaint for Declaratory Injunctive and Monetary Relief

709.   The unconstitutional customs and practices described herein were the moving force
       behind the violations of Plaintiff's constitutional rights.

710.   Defendant City is therefore liable to Plaintiff for damages and appropriate equitable
       relief pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services.

## COUNT XLII

711.   Monell Liability – Due Process Violations Arising from Failure to Route, Refer, or
       Process Matters Through Required Channels

712.   Plaintiff realleges and incorporates by reference the Monell allegations and the Global
       Tolling and Chilling of Remedies allegations, to the extent applicable, pleaded in this
       Complaint.

713.   Defendant City is a municipality and a person subject to liability under 42 U.S.C. §
       1983.

714.   At all relevant times, Plaintiff possessed clearly established constitutional rights under
       the Fourteenth Amendment to due process of law, including the right to access
       governmental procedures, review mechanisms, and decision-making channels required to
       safeguard liberty and legal interests.

715.   Defendant City, through its departments, agents, and policymakers, maintained
       customs, practices, and usages that failed to route, refer, investigate, submit, or otherwise
       process matters through required or customary channels, resulting in closed-loop
       handling without meaningful review or oversight.

716.    These customs and practices were not isolated incidents, but were sufficiently widespread, persistent, and well-settled so as to constitute de facto municipal policy attributable to the City for purposes of Monell liability.

717.    The failure-to-route and closed-loop practices described herein operated to deprive Plaintiff of access to lawful procedures, independent review, and meaningful participation in processes affecting her rights, thereby denying procedural due process.

718.    Defendant City, including its final policymakers and supervisory officials, had actual and constructive notice that such routing and processing failures were occurring and posed a substantial risk of constitutional injury to affected individuals, including Plaintiff.

719.    Despite such notice, Defendant City failed to implement corrective policies, training, supervision, or safeguards to ensure that matters were properly routed, referred, or processed through required channels.

720.    The City's failure to act in the face of known risks constituted deliberate indifference to the constitutional rights of Plaintiff and others similarly situated.

721.    As a direct and proximate result of the City's customs, practices, and deliberate indifference, Plaintiff was deprived of due process of law and suffered foreseeable constitutional injury.

722.    The unconstitutional customs and practices described herein were the moving force behind the violations of Plaintiff's constitutional rights.

723.    Defendant City is therefore liable to Plaintiff for damages and appropriate equitable relief pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services.

**COUNT XLIII**

724.    Monell Liability – Due Process Violations Arising from Systemic Diversion of Administrative Complaints into Coercive Mental-Health Processes

725.    (42 U.S.C. § 1983)

726.    Plaintiff realleges and incorporates by reference the Monell allegations and the Global Tolling and Chilling of Remedies allegations, to the extent applicable, pleaded in this Complaint.

727.    Defendant City is a municipality and a person subject to liability under 42 U.S.C. § 1983.

728.    At all relevant times, Plaintiff possessed clearly established constitutional rights under the Fourteenth Amendment to due process of law, including the right to access appropriate administrative complaint mechanisms, internal review processes, and non-coercive remedial channels when seeking redress for governmental misconduct.

729.    Defendant City, through its departments, agents, and policymakers, maintained customs, practices, and usages that diverted or displaced administrative complaints and misconduct allegations away from lawful review mechanisms and into coercive mental-health processes.

730.    These customs and practices included routing complaints, advocacy, or escalation efforts into involuntary or quasi-involuntary mental-health pathways, rather than

Verified Complaint for Declaratory Injunctive and Monetary Relief

processing such complaints through neutral administrative, supervisory, or corrective channels.

731. The diversion occurred in lieu of, rather than in parallel with, any neutral and independent administrative or supervisory review mechanism capable of providing meaningful oversight.

732. The diversionary practices described herein were not isolated incidents, but were sufficiently widespread, persistent, and well-settled so as to constitute de facto municipal policy attributable to the City for purposes of Monell liability.

733. The substitution of coercive mental-health processes for administrative review operated to deny Plaintiff notice, participation, and meaningful access to complaint-resolution mechanisms, thereby depriving Plaintiff of procedural due process.

734. As a result of Defendant City's practice of diverting administrative complaints and misconduct allegations into coercive mental-health processes in lieu of neutral administrative review, Plaintiff was deprived of her constitutionally protected right to procedural due process, including notice, participation, and meaningful access to lawful complaint-resolution mechanisms.

735. This Count does not allege the good-faith provision of mental-health services, lawful caretaking functions, or parallel crisis intervention, but instead alleges the displacement of neutral administrative complaint-resolution mechanisms through the coercive substitution of mental-health processes as a method of municipal administration.

736.  Defendant City, including its final policymakers and supervisory officials, had actual and constructive notice that such diversionary practices were occurring and posed a substantial risk of constitutional injury, including the chilling of protected petitioning activity.

737.  Despite such notice, Defendant City failed to implement corrective policies, training, supervision, or safeguards to ensure that administrative complaints were processed through lawful, non-coercive review channels.

738.  The City's failure to act in the face of known risks constituted deliberate indifference to the constitutional rights of Plaintiff and others similarly situated.

739.  As a direct and proximate result of the City's customs, practices, and deliberate indifference, Plaintiff was deprived of due process of law and suffered foreseeable constitutional injury.

740.  The unconstitutional customs and practices described herein were the moving force behind the violations of Plaintiff's constitutional rights.

741.  Defendant City is therefore liable to Plaintiff for damages and appropriate equitable relief pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services.


**COUNT XLIV**

742.  Monell Liability – Due Process Violations Arising from Systemic Withholding or Delay of Records Necessary for Participation and Redress

743.  (42 U.S.C. § 1983)

Verified Complaint for Declaratory Injunctive and Monetary Relief

744. Plaintiff realleges and incorporates by reference the Monell allegations and the Global
Tolling and Chilling of Remedies allegations, to the extent applicable, pleaded in this
Complaint.

745. Defendant City is a municipality and a person subject to liability under 42 U.S.C. §
1983.

746. At all relevant times, Plaintiff possessed clearly established constitutional rights under
the Fourteenth Amendment to due process of law, including the right to timely access
records and information necessary to understand, challenge, and participate in
governmental processes affecting her legal interests.

747. Defendant City, through its departments, agents, and policymakers, maintained
customs, practices, and usages that withheld, delayed, or obstructed access to records to
which affected individuals were entitled, including records necessary for participation in
administrative, investigative, or remedial processes.

748. These customs and practices included delaying production, providing incomplete
access, or otherwise impeding timely receipt of records required for meaningful
participation, review, or redress.

749. The due process violations alleged herein do not arise from routine administrative
delay or lawful record-management discretion, but from the systematic withholding or
delay of records at points where such records were necessary for Plaintiff to receive
notice, understand governmental action, or meaningfully participate in ongoing
administrative, investigative, or remedial processes. The deprivation occurred where the

absence of timely records functionally foreclosed participation, review, or redress, notwithstanding Plaintiff's entitlement to access such records for due-process purposes.

750.     The records-withholding practices described herein were not isolated incidents, but were sufficiently widespread, persistent, and well-settled so as to constitute de facto municipal policy attributable to the City for purposes of Monell liability.

751.     The systemic withholding or delay of records operated to deprive Plaintiff of notice, transparency, and a meaningful opportunity to participate in or challenge governmental actions, thereby denying procedural due process.

752.     As a result of Defendants' withholding or delay of records at critical procedural stages, Plaintiff was unable to timely understand, challenge, or participate in governmental processes affecting her legal interests, thereby depriving her of procedural due process.

753.     Defendant City, including its final policymakers and supervisory officials, had actual and constructive notice that such records-access failures were occurring and posed a substantial risk of constitutional injury by foreclosing meaningful participation and remedies.

754.     Despite such notice, Defendant City failed to implement corrective policies, training, supervision, or safeguards to ensure timely and complete access to records necessary for due process.

755.     The City's failure to act in the face of known risks constituted deliberate indifference to the constitutional rights of Plaintiff and others similarly situated.

Verified Complaint for Declaratory Injunctive and Monetary Relief

756.    As a direct and proximate result of the City's customs, practices, and deliberate indifference, Plaintiff was deprived of due process of law and suffered foreseeable constitutional injury.

757.    The unconstitutional customs and practices described herein were the moving force behind the violations of Plaintiff's constitutional rights.

758.    Defendant City is therefore liable to Plaintiff for damages and appropriate equitable relief pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services.

**COUNT XLV**

759.    Monell Liability - Policy or Custom of Circumventing Mandatory Arrest for Protective Order Violations Through Long Form Substitution and Non-Referral

760.    42 U.S.C. § 1983

761.    Plaintiff realleges and incorporates by reference the Monell allegations and the Global Tolling and Chilling of Remedies allegations, to the extent applicable, pleaded in this Complaint.

762.    Defendant City is a municipality and a person subject to liability under 42 U.S.C. § 1983.

763.    At all relevant times, Defendant City maintained policies, customs, and practices governing the enforcement of protective orders and the investigation of domestic violence offenses.

764.    Under Defendant City's enforcement framework, violations of valid protective orders
triggered mandatory arrest obligations upon satisfaction of established factual predicates,
thereby removing officer discretion as to whether enforcement action would occur.

765.    This Count does not assert a constitutional entitlement to any particular enforcement
outcome, including arrest. Rather, it challenges Defendant City's maintenance of a
municipal policy, custom, or practice that structurally circumvented and nullified a
mandatory enforcement framework through the systematic substitution of long form
reporting and non-referral mechanisms. While individual enforcement decisions may
involve discretion in certain contexts, the practices alleged herein operated at the policy
level to eliminate the procedural operation of the mandatory scheme itself, foreclosing
investigation, prosecutorial review, and accountability as a matter of course.

766.    The constitutional injury arises not from the exercise of discretion in individual cases,
but from the City's deliberate design and maintenance of a process that displaced
required enforcement pathways with a dead-end administrative substitute, thereby
depriving Plaintiff of procedural due process, equal protection, and the safeguards
embedded in the governing enforcement structure.

767.    This Count does not challenge discretionary on-scene judgment, investigative
prioritization, or individualized officer decision-making, but instead alleges a municipal
policy and method of administration that structurally displaced and nullified a mandatory
arrest and referral framework through the systematic substitution of long form reporting
and non-referral, regardless of individual case facts.

768.   Despite the mandatory nature of arrest for protective order violations, Defendant City maintained a custom, practice, or usage of declining arrest by substituting long form reporting in lieu of the required arrest.

769.   The substitution of long form reporting operated to circumvent the mandatory arrest requirement applicable to protective order violations and to delay or prevent enforcement action otherwise required by law and policy.

770.   Defendant City further maintained a custom, practice, or usage of failing to complete, route, investigate, or submit such long form reports to the prosecutor's office for review, charging consideration, or further action.

771.   As a result of these practices, the long form process was not used as an alternative path to accountability but instead functioned as a dead end that foreclosed investigation, prosecution, and enforcement.

772.   These practices were not isolated incidents, but were widespread, persistent, and sufficiently well settled to constitute de facto municipal policy attributable to Defendant City.

773.   The combined use of long form substitution and non-referral nullified the mandatory arrest scheme applicable to protective order violations and eliminated the procedural mechanisms necessary to hold offenders accountable.

774.   Defendant City, including its final policymakers and supervisory officials, knew or should have known that the systematic use of long form substitution and non-referral in

protective order cases posed a substantial risk of constitutional injury, including denial of

due process, denial of equal protection, and exposure to continued harm.

775.    Despite such knowledge, Defendant City failed to implement corrective policies,

training, supervision, or safeguards to ensure that protective order violations resulted in

mandatory arrest or, at minimum, complete investigation and prosecutorial submission.

776.    Defendant City's failure to act in the face of known risks constituted deliberate

indifference to the constitutional rights of Plaintiff and others similarly situated.

777.    As a direct and proximate result of Defendant City's policies, customs, and practices,

Plaintiff was deprived of procedural due process, denied equal protection of the laws, and

subjected to an increased risk of harm.

778.    The unconstitutional policies and practices described herein were the moving force

behind the deprivation of Plaintiff's rights secured by the Fourteenth Amendment.

779.    Defendant City is therefore liable to Plaintiff for damages and appropriate equitable

relief pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services.


**COUNT XLVI**

780.    Monell Liability – Due Process Violations Arising from Coercive Repurposing of

Victim Reports, Confidentiality Breach, and Deprivation of Access

781.    (42 U.S.C. § 1983)

782.  Plaintiff realleges and incorporates by reference the Monell allegations and the Global
      Tolling and Chilling of Remedies allegations, to the extent applicable, pleaded in this
      Complaint.

783.  Defendant City is a municipality and a person subject to liability under 42 U.S.C. §
      1983.

784.  At all relevant times, Plaintiff possessed clearly established rights under the
      Fourteenth Amendment to procedural due process, including the right to fair notice,
      transparency, and meaningful opportunity to participate in governmental processes
      affecting her liberty, legal status, and personal security.

785.  Defendant City, through its departments, agents, and policymakers, maintained
      customs, practices, and usages whereby victim-generated police reports and related
      complaint materials were repurposed and utilized against the reporting victim as a basis
      for adverse governmental action, including diversion into civil mental-health evaluation
      or detention mechanisms, rather than being processed through neutral investigative or
      protective channels.

786.  These customs and practices included using victim reports, statements, or complaint
      materials, originally submitted for purposes of protection, enforcement, or redress, as
      justification for coercive mental-health intervention directed at the reporting victim,
      without notice, consent, or procedural safeguards sufficient to protect the victim's liberty
      and participation rights.

787.  Plaintiff alleges these practices based on the objective manner in which her reports
      were processed, repurposed, restricted, and later relied upon in official actions affecting
      her liberty and access, as reflected in the sequence of governmental actions and the
      information made available to her at the time, and not based on disagreement with the
      outcome of any internal review.

788.  These allegations do not turn on the subjective adequacy of any internal review, but
      on the absence of neutral, transparent, and participatory procedures sufficient to satisfy
      due process requirements.

789.  At the same time such reports and materials were repurposed to support adverse state
      action, Defendant City withheld, delayed, or obstructed Plaintiff's access to those same
      records, thereby preventing Plaintiff from reviewing, contesting, correcting, or
      meaningfully responding to the information used to deprive her of liberty and legal rights.

790.  The combined practices of coercive repurposing and record withholding operated to
      convert victim-provided information into a one-sided instrument of state control, while
      denying Plaintiff access to the materials necessary to understand, challenge, or participate
      in the governmental processes invoked against her.

791.  These practices further involved the disclosure, use, or handling of victim-identified
      information in a manner inconsistent with established confidentiality and victim-
      protection principles, not as an independent statutory violation, but as part of a coercive
      procedural framework that foreseeably chilled reporting, petitioning, and participation in
      lawful remedial processes.

792.   The coercive repurposing and withholding practices described herein were not
       isolated incidents, but were sufficiently widespread, persistent, and well-settled so as to
       constitute de facto municipal policy attributable to the City for purposes of Monell
       liability.

793.   Defendant City, including its final policymakers and supervisory officials, had actual
       and constructive notice that these practices were occurring and that they posed a
       substantial risk of constitutional injury, including deprivation of liberty without fair
       process, denial of meaningful access to records, and chilling of protected reporting and
       petitioning activity.

794.   Despite such notice, Defendant City failed to implement corrective policies, training,
       supervision, or safeguards to prevent the coercive repurposing of victim reports, to ensure
       confidentiality was not used as a tool of deprivation, or to guarantee timely access to
       records used to justify adverse state action.

795.   The City's failure to act in the face of known risks constituted deliberate indifference
       to the constitutional rights of Plaintiff and others similarly situated.

796.   As a direct and proximate result of the City's customs, practices, and deliberate
       indifference, Plaintiff was deprived of procedural due process, denied meaningful access
       to information necessary to challenge governmental action, subjected to coercive state
       intervention, and suffered foreseeable constitutional injury.

797.   The unconstitutional customs and practices described herein were the moving force
       behind the violations of Plaintiff's rights under the Fourteenth Amendment.

798.    Defendant City is therefore liable to Plaintiff for damages and appropriate equitable

relief pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services.

799.    Plaintiff's damages arise from the loss of meaningful access to governmental and

judicial processes, deprivation of procedural protections, interference with protected

activity, liberty and safety impacts resulting from state-controlled actions, displacement,

and foreseeable chilling effects. These injuries are concrete, legally cognizable, and flow

directly from Defendants' conduct as alleged, independent of any medical diagnosis or

treatment.

## VI. PRAYER FOR RELIEF

800.    WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her

favor and against Defendant City of Scottsdale, and grant the following relief pursuant to

the Constitution and laws of the United States, the Federal Rules of Civil Procedure, and

the Local Rules of Practice for the United States District Court for the District of Arizona

(LRCiv):

## A. Declaratory Relief

801.    A declaration pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57

that the acts, omissions, policies, customs, practices, and methods of administration of

Defendant City of Scottsdale, as alleged in the Counts of this Complaint, violated

Plaintiff's rights under the Constitution and laws of the United States, including but not limited to rights secured by the First, Fourth, and Fourteenth Amendments and 42 U.S.C. § 1983.

802. A declaration that the challenged policies, customs, practices, failures to act, failures to train or supervise, and ratification by officials with final policymaking authority, as pleaded in the Monell counts, constitute state action under color of law and are attributable to Defendant City of Scottsdale for purposes of municipal liability.

803. A declaration that Defendant City of Scottsdale's acts and omissions, as alleged herein, resulted in the deprivation of federally protected rights through systemic, procedural, and structural failures, rather than isolated, accidental, or negligent conduct.

804. A declaration that the policies, customs, practices, and methods of administration challenged in this action were the moving force behind the constitutional and statutory violations alleged herein.

805. A declaration that the conduct alleged herein is unlawful and unconstitutional as pleaded, and that Plaintiff is entitled to equitable, declaratory, and remedial relief necessary to prevent ongoing and future violations of the same nature.

806. A declaration is necessary to establish the nature, scope, and gravity of the constitutional injuries proven and to inform the full measure of remedial and monetary relief required.

## B. Injunctive and Structural Equitable Relief

807.    An order pursuant to Federal Rules of Civil Procedure 1, 65, and the Court's inherent

equitable authority, granting all injunctive and equitable relief necessary to remedy the

constitutional and statutory violations alleged herein, to prevent their continuation or

recurrence, and to ensure future compliance by Defendant City of Scottsdale with the

Constitution and laws of the United States.

808.    An order requiring Defendant City of Scottsdale to cease, correct, and remediate the

challenged policies, customs, practices, and methods of administration identified in the

Counts alleged herein, and to implement measures sufficient to ensure lawful,

nondiscriminatory, and constitutionally compliant administration of law enforcement and

related governmental processes.

809.    An order granting such ancillary, prospective, supervisory, or structural relief as may

be necessary to effectuate the Court's declaratory and injunctive orders, consistent with

principles of equity, Federal Rule of Civil Procedure 65(d), and governing law.

## C. Neutral Review, Independent Oversight, and Removal from Contaminated Processes

810.    An order declaring that, due to the nature and scope of the systemic, procedural, and

structural violations alleged in the Counts herein, continued administration, handling, or

control of matters involving Plaintiff by Defendant City of Scottsdale presents a

substantial risk of further constitutional injury and undermines the integrity of required governmental processes.

811.   An order directing that Defendant City of Scottsdale be removed from any further discretionary involvement, decision-making, administrative handling, or procedural control over matters arising from the same underlying events, records, or governmental processes at issue in this action, to the extent such involvement implicates Plaintiff's rights, safety, access to justice, or procedural protections.

812.   An order requiring that any further review, handling, assessment, or determination relating to the underlying events, records, or governmental actions involving Plaintiff be conducted by a neutral and independent authority or mechanism, not selected, supervised, or influenced by Defendant City of Scottsdale, and subject to appropriate judicial oversight.

813.   An order authorizing the Court, in its discretion and consistent with its inherent equitable powers, to refer or transmit relevant findings, records, or materials developed in this action to an appropriate independent or oversight authority for review, evaluation, or action, as the Court deems necessary to protect constitutional rights, ensure institutional accountability, or prevent recurrence of the violations alleged.

814.   A declaration that Defendant City of Scottsdale shall not unilaterally determine the adequacy, neutrality, or propriety of any internal review, reassignment, transfer, or delegation of matters involving Plaintiff, and that any such reassignment or review must be independent of Defendant City's control and free from conflicts of interest.

815.   An order preserving the Court's continuing authority to impose additional structural,

supervisory, or remedial measures should discovery or subsequent proceedings reveal

further evidence of systemic deficiencies, procedural contamination, or failures of

institutional independence related to the matters alleged herein.

**D. Non-Retaliation, Non-Interference, and Communication Control**

816.   An order pursuant to Federal Rules of Civil Procedure 1, 16, 26, and 65 immediately

enjoining Defendant City of Scottsdale, including its officers, employees, agents,

contractors, and representatives, from engaging in any form of retaliation, intimidation,

coercion, or adverse treatment toward Plaintiff arising from or related to the subject

matter of this action, Plaintiff's exercise of constitutional or statutory rights, or Plaintiff's

pursuit of relief herein.

817.   An order requiring that, with respect to the subject matter of this action and the

underlying events giving rise to it, all communications initiated by Defendant City of

Scottsdale with Plaintiff be conducted solely through formal, documented, and on-the-

record channels consistent with the Federal Rules of Civil Procedure, this Court's orders,

and LRCiv 7.2 and 16.1.

818.   An order prohibiting Defendant City of Scottsdale from engaging in informal, off-the-

record, ex parte, or non-documented communications with Plaintiff concerning the

subject matter of this action, including but not limited to investigative follow-up,

administrative inquiries, enforcement-related contact, or purported assistance, whether during the pendency of this action or thereafter.

819.    A declaration that informal or off-the-record communications concerning the subject matter of this action would reasonably operate to chill Plaintiff's exercise of rights, interfere with access to the courts, and undermine the integrity of judicial and administrative processes.

820.    Such protections are necessary to prevent further injury and to ensure that the full scope of past harm may be fairly adjudicated.

### E. Continuing Statutory Duties During Litigation

821.    A declaration that the pendency of this civil action does not suspend, diminish, excuse, or otherwise relieve Defendant City of Scottsdale of its ongoing obligations to Plaintiff under applicable victim-rights statutes, disability-access laws, non-discrimination mandates, and constitutional protections.

822.    A declaration that Defendant City of Scottsdale remains fully bound, during the pendency of this litigation and thereafter, to administer all law-enforcement, administrative, and governmental processes involving Plaintiff in compliance with the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and all other applicable federal and state non-discrimination requirements.

823.    An order enjoining Defendant City of Scottsdale from invoking the existence of this litigation as a basis to delay, deny, condition, restrict, or otherwise interfere with

Plaintiff's access to protections, accommodations, participation rights, or procedural safeguards mandated by law.

## F. Discovery Governance, Proportionality, and Pre-Discovery Protections

824.   An order pursuant to Federal Rules of Civil Procedure 26(b), 26(c), 30, 34, 45, and LRCiv 26.1 declaring that discovery in this action shall be limited to matters relevant to Defendants' acts, omissions, policies, customs, practices, and methods of administration as pleaded herein, and proportional to the needs of the case.

825.   An order prohibiting Defendant City of Scottsdale, prior to and during discovery, from engaging in informal discovery, off-record investigation, or third-party outreach concerning Plaintiff outside Court-supervised discovery mechanisms.

826.   An order prohibiting Defendant City of Scottsdale from contacting, interviewing, or soliciting information from any third parties concerning Plaintiff, including personal contacts or collateral sources, absent express Court authorization following a showing of relevance, necessity, and proportionality.

827.   An order prohibiting Defendant City of Scottsdale from initiating contact with, requesting records from, or otherwise communicating with any medical, mental health, counseling, or healthcare provider concerning Plaintiff absent a specific Court order issued pursuant to Rules 26 and 45.

## G. Neutral Oversight, and Record Integrity

828. An order pursuant to Federal Rule of Civil Procedure 1 and the Court's inherent authority declaring that the just, speedy, and efficient resolution of this action is warranted in light of the extended duration of the underlying events, the continuing nature of the alleged violations, and the ongoing harm caused by delay.

829. A declaration that the interests of justice and judicial economy are served by orderly, sequenced adjudication that prevents unnecessary delay, duplicative proceedings, or procedural gamesmanship, without conferring preferential treatment or departing from governing procedural rules.

830. An order directing Defendant City of Scottsdale to preserve, maintain, and protect the integrity of all records, reports, communications, investigative materials, administrative files, metadata, and data systems related to the subject matter of this action, including but not limited to materials reflecting intake, classification, routing, review, modification, escalation, downgrading, or non-referral of matters affecting Plaintiff.

831. An order prohibiting Defendant City of Scottsdale from altering, supplementing, recharacterizing, reclassifying, backfilling, post-dating, or retroactively modifying any record, report, or administrative artifact related to the events at issue, whether for litigation, administrative, or institutional purposes.

832. An order requiring Defendant City of Scottsdale to maintain a clear and auditable provenance for all such records, including the identity of authors, reviewers, supervisors, timestamps, routing paths, and any changes made after initial creation.

833.    An order enjoining Defendant City of Scottsdale from engaging in conduct that compromises the completeness, neutrality, or reliability of information transmitted to prosecutorial, adjudicatory, or oversight authorities in matters involving Plaintiff, whether before, during, or after the pendency of this action.

834.    A declaration that transparency, record integrity, and neutral administration of governmental processes are essential to the adjudication of Plaintiff's claims and to the prevention of further constitutional or statutory injury.

835.    An order preserving the Court's authority to appoint, direct, or receive input from an independent or neutral reviewer, special master, or oversight mechanism if necessary to ensure compliance with the Court's orders, preservation obligations, or equitable relief granted herein.

836.    An order preserving Plaintiff's right to seek appropriate relief, including expedited consideration, protective orders, or supplemental remedies, should delay, obstruction, or record irregularities threaten the orderly administration of justice.

837.    An order preserving the Court's continuing jurisdiction to enforce compliance with all declaratory, injunctive, and equitable relief granted, and to address any future conduct that undermines judicial economy, record integrity, or the fair resolution of this action.

838.    Record integrity and transparency are essential to the accurate valuation of constitutional injuries and the prevention of further harm.

**H. Declaration of Non-Consent and Prohibition on Implied Authority**

839.    A declaration that Plaintiff never consented, expressly or impliedly, to any medical, mental health, caregiving, therapeutic, or supportive relationship with Defendant City of Scottsdale or any individual acting on its behalf.

840.    A declaration that any purported medical, mental health, or caregiving role asserted or assumed by Defendant City of Scottsdale was unauthorized, nonconsensual, and undertaken under protest and duress, and did not create any waiver of rights or authorization of future intervention.

841.    An order prohibiting Defendant City of Scottsdale from asserting, invoking, or relying upon any claimed medical, mental health, caregiving, or provider relationship with Plaintiff as justification for past or future conduct.

## VII. ADA, Victim-Rights, and Continuing Duty Enforcement
## (Non-Waiver, Non-Retaliation, and Court-Supervised Compliance)

842.    An order declaring that Defendant City of Scottsdale's statutory, constitutional, and regulatory obligations to Plaintiff under applicable victim-rights laws, disability-access statutes, and non-discrimination mandates are continuing duties that are not suspended, diminished, or altered by the initiation or pendency of this civil action.

843.    An order declaring that Defendant City of Scottsdale remains fully bound, during and after this litigation, to administer all law-enforcement, investigative, administrative, and governmental processes involving Plaintiff in compliance with the Americans with

Disabilities Act (Title II), Section 504 of the Rehabilitation Act, applicable victim-rights statutes, and all related constitutional protections.

844.    An order enjoining Defendant City of Scottsdale from invoking the existence of this litigation as a basis to delay, deny, condition, restrict, or otherwise interfere with Plaintiff's access to victim protections, disability accommodations, participation rights, procedural safeguards, or equal access to governmental services.

845.    A declaration that Plaintiff's past, present, or future communications referencing disability, access needs, victim status, safety concerns, or related matters were made for the limited purpose of seeking protection, access, or remediation through state-controlled processes and do not constitute a waiver of privacy, privilege, confidentiality, or any other legal right.

846.    A declaration that no waiver of rights may be implied from Plaintiff's participation in state-initiated processes, compliance under compulsion or protest, partial disclosure, silence, omission, or procedural complexity, and that any waiver must be explicit, narrowly defined, plainly stated, and knowingly executed by Plaintiff in writing.

847.    A declaration that any purported waiver of Plaintiff's rights shall be effective only if set forth in a stand-alone written instrument, clearly titled as a waiver, limited to the specific right being waived, stated in plain and unambiguous language, and personally signed by Plaintiff after an opportunity to review its scope. No waiver may be created, inferred, or enforced through incorporation by reference, embedded language, omnibus

filings, discovery materials, stipulations, protective orders, administrative forms, or documents exceeding the narrow purpose of the waiver itself.

848. An order prohibiting Defendant City of Scottsdale from retaliating against Plaintiff, engaging in adverse treatment, heightened scrutiny, differential handling, or procedural obstruction in response to Plaintiff's assertion of rights under victim-rights laws, the ADA, Section 504, this Court's orders, or the pursuit of relief in this action.

849. An order enjoining Defendant City of Scottsdale from engaging in character-based, credibility-based, or disability-based framing, positioning, or administrative handling that has the purpose or effect of undermining Plaintiff's access to protection, participation, enforcement, or judicial remedies.

850. An order requiring that all interactions, communications, and administrative handling involving Plaintiff during the pendency of this action be conducted in a manner that is non-retaliatory, non-discriminatory, procedurally compliant, and subject to Court supervision where appropriate.

851. An order preserving Plaintiff's right to seek supplemental relief, protective orders, sanctions, or amendment should Defendant City of Scottsdale's conduct during the pendency of this action give rise to additional statutory or constitutional violations.

852. An order preserving the Court's continuing equitable authority to enforce these declarations and injunctions and to grant appropriate relief in the event of non-compliance, interference, or retaliatory conduct by Defendant City of Scottsdale.

## J. Judicial Economy and Expeditious Resolution

853. A declaration that efficient and orderly adjudication of the claims presented serves the interests of justice, judicial economy, and the prevention of further harm, without seeking preferential treatment or deviation from governing procedural rules.

854. Expeditious resolution is necessary to prevent compounding injury and to ensure that the full measure of harm is not understated by delay.

## K. Record Integrity, Provenance, and Transmission Relief

855. An order declaring that the integrity, completeness, accuracy, and neutrality of governmental records, reports, and materials generated by Defendant City of Scottsdale concerning Plaintiff constitute matters of constitutional significance where such records affect enforcement decisions, prosecutorial review, victim-rights protections, or access to judicial remedies.

856. An order requiring Defendant City of Scottsdale to identify, preserve, and account for the full lifecycle, provenance, and handling of all records, reports, forms, and materials generated in connection with the underlying events alleged in the Counts herein, including but not limited to initial reports, supplemental reports, long-form reports, amendments, revisions, reclassifications, downgrades, upgrades, referrals, and internal routing documents.

857. An order requiring Defendant City of Scottsdale to disclose, through Court-supervised discovery or other mechanisms authorized by the Court, the dates, authors, revisions,

classifications, and transmission history of such records, including when and how such materials were provided to, withheld from, delayed in transmission to, or supplemented for prosecutorial or adjudicatory authorities.

858. An order requiring Defendant City of Scottsdale to disclose whether any records, reports, or materials concerning Plaintiff were generated, modified, reclassified, or transmitted after Defendant City had notice of Plaintiff's protected activity, complaints, or pursuit of legal remedies, and to identify the timing and purpose of any such post-notice actions.

859. A declaration that the adequacy, completeness, or prosecutability of materials transmitted to prosecutorial authorities is not determinative of Defendant City of Scottsdale's constitutional obligations in generating, preserving, and transmitting records in a neutral, accurate, and procedurally compliant manner.

860. A declaration that Plaintiff does not challenge prosecutorial discretion or immunity but seeks transparency into the acts and omissions of Defendant City of Scottsdale that shaped, constrained, or affected the information available for prosecutorial review.

861. An order prohibiting Defendant City of Scottsdale from altering, supplementing, recharacterizing, or retroactively justifying records or reporting practices relating to Plaintiff outside Court supervision once litigation has commenced or thereafter.

862. An order preserving the Court's authority to impose appropriate remedial or evidentiary consequences should it be determined that records were materially altered,

withheld, delayed, misrouted, or administratively substituted in a manner that interfered

with Plaintiff's constitutional or statutory rights.

## L. Monetary Relief

863.    An award of monetary relief in an amount to be determined by the trier of fact,

without limitation, including but not limited to compensatory damages, presumed

damages, nominal damages, statutory damages, and all other forms of legal or equitable

monetary relief authorized by law, for past, ongoing, and future injuries proximately

caused by Defendant City of Scottsdale's acts, omissions, policies, customs, practices,

and methods of administration.

864.    Such monetary relief shall fully compensate Plaintiff for the nature, severity, duration,

and consequences of the constitutional and statutory violations alleged, including but not

limited to injuries arising from the deprivation of federally protected rights; loss of

personal security, liberty, and bodily integrity; exposure to foreseeable physical harm;

interference with access to justice; chilling of protected activity; and other harms inherent

in and flowing from Defendants' unlawful conduct. including but not limited to injuries

arising from the deprivation of federally protected rights; loss of personal security,

liberty, and bodily integrity; physical harm and bodily consequences resulting from

exposure to foreseeable violence, coercive control and interference with access to justice.

865.   Monetary relief shall not be limited to nominal or minimal damages where such relief
       would fail to remedy the full scope of the injuries proven, and shall reflect the gravity of
       the violations, the foreseeability of harm, and the need for meaningful redress.

866.   Plaintiff further seeks all applicable pre-judgment and post-judgment interest, punitive
       or exemplary damages to the extent permitted by law, and any additional legal or
       equitable monetary relief necessary to fully remedy the violations alleged, prevent their
       recurrence, and effectuate the purposes of the Constitution and laws at issue. Allocation,
       characterization, and determination of such monetary relief are expressly reserved to the
       trier of fact and the Court as appropriate.

867.   The assessment of such damages necessarily requires the exercise of reasoned
       judgment by the trier of fact in light of the full scope of the injuries proven.

## M. Costs and Fees

868.   An award of Plaintiff's costs, litigation expenses, and reasonable attorneys' fees
       pursuant to 42 U.S.C. § 1988 and other applicable law, should counsel be retained or
       appointed.

## N. Jury Demand

869.   A trial by jury on all issues so triable under the Seventh Amendment and applicable
       federal law.

## O. Other Relief

870.    Such other and further relief as the Court deems just, proper, and equitable under the circumstances.

## P. Clarification and Reservation of Remedies

871.    Plaintiff's references to specific statutes, rules, or sources of authority in this Prayer for Relief are intended solely to identify non-exclusive bases for relief that are already authorized by law, and not to limit, condition, or narrow the scope of relief available. Plaintiff expressly seeks all relief, legal, equitable, declaratory, structural, and monetary, to which she may be entitled under the Constitution and laws of the United States based on the facts proven, whether or not such relief is expressly enumerated herein. No citation or omission shall be construed as a waiver, limitation, or election of remedies, nor as restricting the Court's authority to grant full relief as justice requires.

## Q. ANTI-SLAPP CONSTRUCTION, LITIGATION-PRIVILEGE LIMITS, AND DETERRENCE NOTICE

872.    Judicial Construction and Scope. Plaintiff seeks a declaration that this action is brought for the purpose of obtaining judicial resolution of the claims and issues presented, and not to restrain or burden lawful petitioning activity or protected expression. Plaintiff further seeks a construction clarifying that the initiation of this

action places all parties and identified third persons on notice that subsequent litigation-related activity remains subject to judicial review and applicable limitations under Arizona law.

873. Limits on Litigation Privilege. Plaintiff seeks a declaration that the litigation privilege, petitioning doctrine, and any related immunities are limited to communications and conduct undertaken in furtherance of legitimate adjudicative proceedings. Such doctrines do not, standing alone, preclude judicial inquiry into whether collateral, duplicative, or ancillary proceedings exceed the lawful scope of those protections or constitute misuse of judicial or governmental processes.

874. Deterrence of Collateral or Retaliatory Proceedings. Plaintiff seeks recognition of the Court's inherent authority, and any applicable statutory authority, to deter the initiation of collateral, duplicative, or retaliatory actions arising from the same nucleus of operative facts where such actions impose unnecessary burden, expense, or coercive leverage inconsistent with orderly adjudication.

875. Fee-Shifting and Protective Relief. To the fullest extent permitted by Arizona law, Plaintiff seeks an order providing that any party or identified third person who initiates a proceeding later determined by the Court to fall outside the protections of lawful petitioning or litigation privilege may be subject to dismissal, sanctions, and recovery of costs and attorneys' fees as authorized by statute, rule, or the Court's inherent powers.

876. Prospective Reservation and Notice. Plaintiff expressly reserves all rights to seek expedited relief, dismissal, sanctions, and fee-shifting in response to any future filing that the Court determines constitutes abuse of process, improper collateral litigation, or a SLAPP-type proceeding. This pleading is intended to operate as advance notice that such remedies will be pursued if warranted, and no waiver or limitation of any statutory or common-law right or remedy is intended.

## VIII. PRESERVATION, CONSTRUCTION, AND RESERVATION OF RIGHTS

877. This Complaint is pleaded pursuant to Federal Rule of Civil Procedure 8 and shall be construed as a whole, in a manner consistent with notice pleading and the remedial purposes of the constitutional and statutory provisions invoked. No paragraph, sentence, or allegation shall be read in isolation or construed narrowly to defeat the fair import of the pleadings herein when read in its entirety. All factual allegations are to be accepted as true and construed in the light most favorable to Plaintiff at all stages where such construction is required by law.

878. Headings, titles, captions, and section labels used in this Complaint are for organizational convenience only and do not limit, define, or circumscribe the scope of the allegations, claims, theories of liability, or relief sought. The use of illustrative examples, categories, or descriptions is intended to be non-exclusive, and the absence of a specific

reference shall not be construed to imply exclusion, waiver, limitation, or abandonment of any allegation, theory, or form of relief otherwise supported by the pleading.

879.    This Complaint incorporates by reference only those materials expressly identified within the text of this pleading. No prior, contemporaneous, or subsequent communications, notices, administrative filings, correspondence, reports, or proceedings are incorporated by implication, context, reference, or historical association. Any consideration or use of materials outside this pleading shall be governed solely by the Federal Rules of Civil Procedure and the Federal Rules of Evidence, and nothing herein shall be construed as adopting, conceding, authenticating, or endorsing any document not expressly incorporated herein.

880.    Nothing in this Complaint shall be construed as a waiver, concession, or admission by omission, silence, or pleading choice. Plaintiff does not purport to allege all facts, events, or evidence relevant to the claims asserted, and expressly reserves the right to establish additional facts, acts, omissions, policies, customs, or practices through discovery and at trial. The scope, framing, and level of detail pleaded are limited to what is required to satisfy Rule 8, and no adverse inference may be drawn from the selection, organization, or sequencing of allegations.

881.    Plaintiff's allegations are asserted in good faith based on information presently available and are not intended to be temporally, factually, or evidentially exhaustive. Alleged acts, omissions, policies, customs, and practices may be continuing, recurring, cumulative, or part of an ongoing pattern unless expressly stated otherwise. Nothing in

this Complaint shall be construed to limit the temporal scope of the claims, the duration of the harm, or the availability of relief based on continuing or future effects of the conduct alleged.

882.  Plaintiff does not, by filing this Complaint or by participating in any administrative, investigative, or judicial process, consent to, authorize, or ratify any medical, mental health, caregiving, evaluative, or therapeutic role by Defendant or any person acting on its behalf. Allegations of injury, harm, or impact do not place Plaintiff's medical, mental health, financial, or personal records in controversy, and no waiver of privacy, confidentiality, or privilege is intended or implied. Any discovery or inquiry into such matters requires a specific showing of relevance and proportionality and appropriate Court authorization.

883.  No allegation, omission, example, or level of detail in this Complaint shall be construed as an admission regarding the completeness of the facts, the full scope of Defendant's conduct, or the totality of the harms suffered. Plaintiff expressly reserves the right to prove additional facts, impacts, policies, customs, practices, or methods of administration through discovery or other admissible evidence, and no adverse inference may be drawn from the scope, sequencing, or specificity of the allegations pleaded.

884.  This Complaint does not adopt, incorporate, or rely upon any prior communications, notices, administrative filings, correspondence, recordings, reports, or proceedings except to the extent that any such material is expressly and specifically identified within the body of this pleading. The existence of prior or parallel matters does not expand or

modify the allegations asserted herein, and the use of any extrinsic material is governed solely by applicable procedural and evidentiary rules.

885.    Plaintiff does not waive, relinquish, or limit any claim, theory, defense, or form of relief by the manner in which relief is requested or by the pursuit of one form of relief before another. Equitable, declaratory, and monetary remedies are cumulative and concurrent, and the assertion or adjudication of any remedy shall not be construed to foreclose or diminish any other relief supported by the facts proven and the law applied.

886.    No silence, delay, partial engagement, compliance under compulsion, or participation in any process shall be construed as consent, authorization, ratification, acquiescence, or acceptance of Defendant's conduct, explanations, characterizations, or procedures.

887.    No waiver or concession may be implied from Plaintiff's actions or inactions absent an explicit, knowing, and written statement executed by Plaintiff that clearly and narrowly identifies the right being waived.

888.    The allegations, claims, and requests for relief set forth in this Complaint are intended to be construed consistently with the remedial and protective purposes of the Constitution and civil-rights statutes at issue. Any ambiguity shall be resolved in a manner that effectuates enforcement of those protections rather than restricts them.

889.    If any provision of this Complaint is held invalid or unenforceable, such determination shall not affect the validity of the remaining allegations, claims, or requests for relief, all of which shall remain in full force and effect, and the Court shall retain continuing authority to enforce, supervise, and give effect to any relief granted.

## IX. ADA ACCESS-TO-COURTS, GOOD-FAITH DRAFTING, AND RULE-BASED PRESERVATION NOTICE

890.    Plaintiff is a qualified individual with a disability within the meaning of Title II of the

Americans with Disabilities Act and Section 504 of the Rehabilitation Act. This Verified

Complaint reflects Plaintiff's good-faith and best-effort attempt to meaningfully access

the courts and to comply with the Federal Rules of Civil Procedure and the Local Rules

of Practice for the United States District Court for the District of Arizona.

891.    Plaintiff does not place the nature, severity, duration, treatment, or diagnosis of any

medical or psychological condition at issue and alleges disability status solely for

purposes of establishing Defendants' statutory obligations and notice thereof, not as an

element of damages or causation.

892.    The length, structure, formatting, and level of detail contained herein are intentional

and undertaken to ensure clarity, completeness, accuracy, and preservation of rights in

the absence of counsel. They are not the product of neglect, bad faith, or disregard of

procedural rules, but rather reflect reasonable modification necessary to ensure equal

access to judicial process, consistent with Federal Rule of Civil Procedure 1, Rule 8(e),

and Local Rule of Civil Procedure 1.1.

893.    Plaintiff does not seek exemption from substantive legal standards and recognizes the

Court's authority to dismiss legally insufficient claims. Plaintiff respectfully preserves,

however, her right to reasonable accommodations in the application of procedural rules,

including liberal construction, non-punitive interpretation of form, and an opportunity to cure any curable deficiencies prior to adverse disposition, consistent with Federal Rule of Civil Procedure 15(a)(2), the Court's inherent authority, and governing access-to-justice principles.

894.    Nothing in this notice is intended to constrain the Court's discretion, alter the governing standards of review, or request preferential treatment. It is submitted solely to document Plaintiff's good-faith compliance with applicable rules, to prevent adverse inference based on form or presentation, and to ensure that any procedural issues are addressed in a manner consistent with the just, fair, and orderly administration of justice.

## X. VERIFICATION

895.    I, Brigitte Keene, declare and state as follows:

896.    I am the Plaintiff in this action. I am over the age of eighteen years, am legally competent to make this verification, and submit this declaration based on my personal knowledge, information, and belief as of the date this Verified Complaint is executed.

897.    I have read the foregoing Verified Complaint in its entirety, including all sections, paragraphs, and Counts set forth therein.

898.    The factual allegations contained in this Verified Complaint are true and correct to the best of my knowledge, information, recollection, and belief as of the date of filing, based on my personal experiences, observations, and involvement in the events described herein, together with information reasonably available to me at this time.

899.    To the extent any allegations are made upon information and belief, including

allegations concerning policies, customs, practices, intent, causation, institutional

knowledge, or systemic conduct, such allegations are asserted in good faith and are based

on a reasonable investigation, review of materials presently available to me, and

reasonable inferences drawn from facts alleged in this Complaint.

900.    To the extent any allegations may be construed as legal conclusions,

characterizations, or mixed questions of law and fact, such allegations are asserted in

good faith based on my understanding of applicable legal standards, good-faith legal

research conducted as a pro se litigant, and the information reasonably available to me at

this time. Such assertions are not intended as representations of ultimate legal

conclusions and are subject to further development, clarification, or revision as permitted

by law.

901.    This verification is not intended, and shall not be construed, as a waiver, concession,

or limitation of any rights under the Federal Rules of Civil Procedure, including but not

limited to Rules 8, 12, 15, 26, or 56.

902.    I expressly reserve the right, without prejudice, to amend, supplement, clarify, or

confirm the allegations herein as permitted by law and the Federal Rules of Civil

Procedure, including as additional facts, evidence, disclosures, discovery, or rulings

become available.

903.   I further declare that this Verified Complaint is filed in good faith for the purpose of seeking redress for alleged violations of federal rights, and not for any improper purpose, including harassment, delay, or needless increase in the cost of litigation.

904.   I declare under penalty of perjury under the laws of the United States, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief as of the date executed.

905.   Executed this 14th day of January, 2026, at Phoenix, Arizona, Maricopa County.

Respectfully submitted,

Brigitte Keene

Brigitte Keene

Plaintiff, Pro Se

# APPENDIX A: NON-WAIVER OF CONSTITUTIONAL AND STATUTORY PROTECTIONS; PUBLIC-POLICY LIMITATIONS ON STATE ACTION

## A. Purpose and Scope

906.    This Appendix is incorporated by reference into each Count of the Complaint for the limited and exclusive purpose of clarifying the legal effect of Plaintiff's conduct in circumstances involving state-controlled processes, coercive authority, protective frameworks, and governmental decision-making.

907.    This Appendix does not plead additional facts. It is included solely to clarify non-waiver, non-consent, and public-policy limitations applicable to Plaintiff's constitutional and statutory rights as alleged elsewhere in the Complaint.

908.    Nothing herein constitutes an admission, concession, or waiver by Plaintiff.

## B. No Consent or Waiver of State-Imposed Deprivations

909.    Plaintiff did not and could not consent to the deprivation of constitutional, statutory, or procedural protections governing law-enforcement response, protective-order enforcement, access to governmental safeguards, or participation in state-controlled processes.

910.    Any apparent acquiescence, compliance, cooperation, communication, or continued engagement occurring under conditions of fear, coercion, intimidation, perceived

authority, or constrained alternatives is legally ineffective to waive Plaintiff's rights or to authorize state deprivation.

911.    Constitutional and statutory protections administered by the State cannot be waived through survival behavior, fear-based decision-making, or attempts to prevent escalation or further harm.

## C. No Waiver Through Contact, Return, or Engagement with State Processes

912.    Plaintiff's continued presence in shared spaces, intermittent contact, partial cooperation, return to jurisdiction, or engagement with law-enforcement or administrative systems does not constitute consent, waiver, ratification, assumption of risk, or mitigation of Defendants' conduct.

913.    A person's efforts to remain safe, reduce volatility, secure protection, or navigate state-controlled processes do not waive constitutional or statutory protections or excuse governmental noncompliance.

914.    Periods of reduced enforcement, delayed response, or temporary administrative closure do not extinguish Defendants' obligations or authorize subsequent deprivation of protected rights.

## D. No Waiver Through Delay, Hesitation, or Inconsistent Participation

915.    Delay in reporting, partial reporting, inconsistent cooperation, hesitation, or

withdrawal from governmental processes does not constitute consent, waiver, estoppel,

forfeiture, or lack of injury.

916.    Fear-based non-participation, intimidation-driven hesitation, or perceived futility of

protection does not negate the existence, severity, or legal significance of the underlying

deprivations.

917.    Plaintiff's interaction with state systems under conditions shaped by coercive

authority or structural imbalance is legally immaterial to Defendants' liability for

constitutional or statutory violations.

**E. Protective Orders and State Safeguards Are Non-Waivable**

918.    Court-issued protective orders, no-contact orders, and statutory enforcement

frameworks reflect state authority and public policy.

919.    Plaintiff lacks legal capacity to waive, suspend, nullify, or privately authorize

deviations from such state-imposed protections.

920.    Any purported consent, reconciliation, communication, or accommodation by

Plaintiff is legally ineffective to excuse violations of court-issued protections or to relieve

Defendants of mandatory enforcement duties.

**F. Public Policy Against Privatizing Constitutional Deprivations**

921. Public policy prohibits legitimizing constitutional or statutory deprivations through private conduct, victim behavior, or procedural disengagement.

922. Bodily integrity, personal security, access to protection, and procedural due process are non-waivable rights when administered through state authority.

923. Civil liability for deprivation of federally protected rights cannot be avoided by invoking relationship dynamics, partial cooperation, or Plaintiff's conduct under coercive conditions.

### G. No Comparative Fault, Assumption of Risk, or Consent Defense

924. Comparative fault, assumption of risk, contributory negligence, provocation, or consent doctrines do not apply to constitutional or statutory violations effected through state action.

925. Plaintiff's conduct cannot be used to diminish, offset, or excuse Defendants' liability where harm arose from state-controlled processes, omissions, or coercive authority.

### H. Survival-Based Conduct Is Not Waiver

926. Plaintiff's actions undertaken to preserve safety, avoid escalation, maintain access to protection, secure housing, or mitigate retaliation constitute survival-based conduct.

927. Survival-based conduct does not equal consent.

928. Survival-based conduct does not equal waiver.

929. Survival-based conduct does not equal assumption of risk.

### I. No Implied Waiver Through Silence or Endurance

930.    Silence, endurance, tolerance, delayed objection, or continued engagement with state

systems does not constitute implied waiver of constitutional or statutory rights.

931.    Enduring deprivation or remaining within state-controlled processes under fear or

constraint does not legalize the deprivation endured.

### J. Preservation of Rights and Objections

932.    Plaintiff expressly preserves all rights, objections, and privileges, including objections

to discovery based on relevance, proportionality, scope, and privacy.

933.    Nothing in this Appendix or in the Complaint shall be construed as placing Plaintiff's

medical history, mental health, finances, personal life, character, or credibility in general

controversy.

934.    This Appendix is asserted defensively and preemptively to prevent

mischaracterization of Plaintiff's conduct and to enforce non-waiver as a matter of law

and public policy.

### K. Incorporation

935.    This Appendix is incorporated by reference into each Count of the Complaint as if

fully set forth therein.