Brigitte Keene
2801 Ocean Park Blvd., Ste. 2416
Santa Monica, CA 90405
602-400-3566
jane.d.azcase@proton.me
Plaintiff, Pro Se

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Brigitte Keene,<br><br>Plaintiff,<br><br>v.<br><br>City of Scottsdale,<br><br>Defendant. | **Case No. CV-26-00225-PHX-JJT**<br><br>**PLAINTIFF'S VERIFIED MOTION FOR DISQUALIFICATION AND REASSIGNMENT PURSUANT TO 28 U.S.C. § 455(a)** |

Plaintiff Brigitte Keene, appearing pro se, moves for disqualification of the assigned District Judge under 28 U.S.C. § 455(a) and reassignment under neutral District procedures. This Motion is not another request to reconsider Document 52, and it does not rest on adverse rulings alone. It presents a narrower and more serious question: whether the Court's own announced, case-long view of Plaintiff has become part of the impartiality problem.

Plaintiff alleges that the cumulative treatment reflected in this docket has crossed from ordinary case management into discriminatory, abusive, exclusionary treatment and bullying in effect. She alleges that known disability-related communication has been converted into evidence against her as a litigant: explanation into inundation, context into tangentiality, persistence into improper multiplication, and disability-implicated communication into supposed incomprehensibility or improper motive.

Plaintiff does not ask to be excused from rules or favored in outcome. She asks for what § 455(a) protects: a process that still appears neutral. She does not accept a choice between tolerating treatment she alleges is abusive and abandoning the claims she came to federal court to litigate.

## I. GOVERNING STANDARD

Section 455(a) requires a federal judge to disqualify himself when his impartiality "might reasonably be questioned." 28 U.S.C. § 455(a). The Ninth Circuit asks whether a reasonable person with knowledge of all the facts would reasonably question impartiality. United States v. Holland, 519 F.3d 909, 913-14 (9th Cir. 2008); Clemens v. U.S. Dist. Court, 428 F.3d 1175, 1178 (9th Cir. 2005). Plaintiff recognizes Liteky v. United States, 510 U.S. 540, 555-56 (1994): ordinary rulings, criticism, and case-management decisions generally do not establish disqualifying bias. The issue here is not disagreement. It is cumulative characterization, notice, and prospective effect.

## II. THE PERSON BEHIND THE DOCKET

Before Plaintiff became a docket number, she was a woman trying to survive and report domestic violence. Plaintiff alleges that on February 3, 2025, she experienced a serious domestic-violence assault that she believed could have taken her life. She entered the period that followed carrying PTSD, trauma, nightmares, flashbacks and the consequences of surviving violence.

She entered this action without counsel. She had no associates, paralegals, litigation department, or lawyer trained to compress a complicated record into professional shorthand. She read the rules herself. She read the Court's orders herself. She revised pleadings, tracked deadlines,

organized evidence, preserved issues, served disclosures, and tried to identify governmental actors and information that were not fully known to her.

She did not ask to be exempt from the Federal Rules, Local Rules, discovery, deadlines, hearings, or lawful judicial authority. She asked for equal access. She explained that autism, ADHD, PTSD, and trauma affect processing, organization, chronology, attribution, and compression of complex information, and that written structure, specificity, and predictable timing help her respond accurately.

Plaintiff does not claim equal institutional authority with a federal judge. She asserts equal dignity before the law. A disabled pro se litigant does not receive meaningful access merely because the electronic filing system accepts her papers. Her arguments must still be evaluated as arguments, not as manifestations of a preexisting judgment about the person speaking.

## III. THE COURT WAS PLACED ON EXPRESS NOTICE OF THE ACCESS PROBLEM

Document 12 denied Plaintiff's accommodation request and warned that filing access was not "a wholesale ticket to inundate the Court with frivolity" because she wished to provide explanatory detail. The order further stated that Plaintiff "basically requests that she file anything without regard for reason or consequence" and that filings may not arise from "whim." Those were among the Court's earliest substantive characterizations of Plaintiff's participation.

Plaintiff did not answer that language by escalating. In Document 27, she documented that she materially narrowed, restructured, and reorganized her pleading in an effort to comply. She also expressly objected to having disability-related access requests, explanatory detail, or requests for specificity reframed as whim, frivolity, entitlement, refusal, or procedural defiance.

By May 2026, the docket contained Plaintiff's disclosure that she was clinically diagnosed with autism, ADHD, and PTSD and her explanation that structure, specificity, and processing time were functional access needs. By September 29, 2026, Document 40 stated that the Court would make reasonable efforts to accommodate Plaintiff's stated communication disability, that the Court was more fully apprised of its contours, and that trauma could impair Plaintiff's ability to provide input in the moment.

After that point, ignorance no longer explained later characterizations of the same communication conduct Plaintiff had identified as disability-implicated.

## IV. THE DEADLINE DISPUTE WAS ABOUT ACCOUNTABILITY, NOT MERE DISSATISFACTION

Document 45 sought modification of the amendment and joinder deadline because information concerning actor identity, authority, responsibility, and information flow remained outside Plaintiff's possession and could require discovery before she could responsibly determine whether amendment or joinder was warranted. Plaintiff did not claim amendment was certain; she explained why discovery could determine whether it was necessary at all.

Document 46 nevertheless stated that Plaintiff "provides no reason" and used generalized language concerning fishing expeditions, claim hunting, and "snooping around." Plaintiff then asked the Court to distinguish between no reason and reasons found legally insufficient.

Document 52 later described Document 45 as a motion "in which she set forth the reasoning." That distinction matters. Plaintiff's effort to correct the record was not merely an attempt to obtain a preferred date. It was an effort to prevent an adverse characterization of her purpose from becoming part of the case. She warned that such characterizations could later affect how diligence, discovery conduct, credibility, compliance, and litigation purpose were understood.

Plaintiff also states unequivocally that she believes the November 20 deadline was selected for political reasons. She does not present political motive as an adjudicated fact. She preserves the allegation as a genuinely held belief because she contends the deadline's timing and rigidity materially impair governmental accountability before discovery identifies responsible actors.

## V. DOCUMENT 49 PRESENTED A SERIOUS WITNESS, PRIVACY, AND SAFETY ISSUE

On November 1, 2026, Plaintiff filed Document 49 concerning Daniel Olsen, a disclosed defense witness and Plaintiff’s former intimate partner. The motion alleged that Olsen sent a communication titled "You have until sundown," demanded money, threatened dissemination of intimate material through Plaintiff's contacts, social media, and Pornhub, displayed an attachment identified as bk.mp4, and represented that Lindsey Gomez and Judge Tuchi were copied.

Plaintiff did not claim as established fact that Judge Tuchi, chambers personnel, Ms. Gomez, or City officials directed the communication, or that any person Olsen claimed to have copied actually received or reviewed the material. She asked for protection, preservation, clarification, and control of discovery.

The motion further stated that Plaintiff notified Defendant and Ms. Gomez, requested safeguards and a standstill concerning further Olsen witness development, and that Defendant responded: "The City intends on deposing Mr. Olsen." Plaintiff again distinguished allegation from proof and did not claim that Defendant's decision itself established coordination or wrongdoing.

Document 52 devoted substantial attention to Plaintiff's emails, page length, explanatory structure, alleged repetition, judicial workload, and possible sanctions. It did not resolve Document 49.

It did not address the separate emergency request concerning threatened intimate-material dissemination, Defendant's disclosed witness, Defendant's continued intention to depose that witness after notice, or Olsen's representation that the assigned Judge had been copied on the communication threatening dissemination of intimate material and displaying an attachment identified as bk.mp4.

That contrast is part of the impartiality record. While the Court was counting Plaintiff's pages, Plaintiff was asking it to protect the integrity of proceedings involving a disclosed defense witness and alleged threats concerning intimate material.

## VI. DOCUMENT 52 ANNOUNCED A CASE-LONG ADVERSE VIEW OF PLAINTIFF

Document 52 stated that Plaintiff "merely disagrees" with the Court, described Documents 47 and 51 as showing a "practice or trend" of "simply trying to bury the Court in paper" and raising "tangential issues," and declared that both practices had existed "since its inception." It criticized the reconsideration motion for having "ballooned to 17 pages," referenced "incomprehensible filings," invoked judicial workload, and issued a "one last" warning before sanctions.

The phrase "since its inception" is central. Plaintiff does not speculate that the Court’s adverse assessment is case-long. The Court said so. By then, it had also been placed on notice that communication itself was disability-implicated and that Plaintiff had specifically objected to those manifestations being converted into evidence of defiance, improper purpose, or noncompliance.

The Court did not merely identify a page limit. It attributed motive. It did not merely say a particular argument was unnecessary. It said Plaintiff was "simply trying" to bury the Court in paper. Once a judicial officer has publicly announced a case-long adverse view of a litigant's

purpose and manner of participation, the question under § 455(a) is no longer whether the litigant can explain herself better. It is whether future rulings still appear to begin from neutral ground.

## VII. PLAINTIFF EXPRESSLY ALLEGES DISABILITY DISCRIMINATION, ABUSIVE TREATMENT, EXCLUSION, AND BULLYING IN EFFECT

Plaintiff states this directly because further euphemism would obscure the issue. In light of her known disabilities, trauma-related limitations, pro se status, repeated efforts to comply, and the cumulative treatment reflected in the docket, Plaintiff believes the conduct described herein is discriminatory and abusive. She further alleges that it is exclusionary and has the effect of institutional bullying.

Plaintiff alleges disability discrimination because known disability-implicated features of communication have repeatedly been used as a basis for adverse conclusions about motive, character, good faith, and legitimacy as a litigant. She alleges abusive treatment because the cumulative language does more than identify a discrete procedural defect and direct correction; it attributes improper purpose and negative character to her participation after notice that the challenged manner of communication is affected by disability and trauma.

Plaintiff does not ask the Court to accept these labels as adjudicated findings. She places them on the record as her allegations and asks the objective question § 455(a) requires: whether a fully informed observer could reasonably question impartiality after the Court itself has announced a case-long adverse view of this litigant.

## VIII. THE SANCTIONS WARNING CROSSES FROM PAST CHARACTERIZATION INTO PROSPECTIVE CHILL

Document 52 issued what it described as a "one last" warning before considering sanctions. Plaintiff states under penalty of perjury that she has not knowingly engaged in conduct she understands to be sanctionable and has instead attempted in good faith to comply with governing rules and Court orders, preserve issues, distinguish allegation from proof, and seek relief through procedures available to her as a self-represented litigant.

Against that record, Plaintiff believes the threat of sanctions is an abuse of judicial power and operates as a chilling mechanism. She does not contend that a federal court lacks sanctions authority. She contends that invoking sanctions against her continued efforts to preserve issues, seek access, correct the record, and request recusal after known disability-related communication problems creates a concrete risk that lawful participation itself will be treated as misconduct.

Plaintiff will not treat the possibility of sanctions as a command to surrender lawful objections, abandon preservation, remain silent about disability-access barriers, or withdraw this recusal request. Her rights are not conditioned on silence. Nor will she accept a false choice between tolerating treatment she alleges is abusive and leaving federal court.

## IX. PLAINTIFF DOES NOT ABANDON HER CASE

Plaintiff does not abandon this action, waive any claim, refuse to prosecute, or consent to dismissal. She seeks discovery, evidence, and adjudication on the merits. Until ordered otherwise, she will comply with operative lawful deadlines and obligations to the extent she is able, under express objection and without waiving recusal, access, discrimination, abuse, preservation, or later-review issues.

Her position is simple: objection is not abandonment. Preservation is not defiance. Disability-related communication is not bad faith. Seeking recusal is not refusal to litigate.

**X. THE PRESENT JUDICIAL RELATIONSHIP HAS REACHED AN IMPASSE**

Plaintiff sought accommodation. She narrowed. She reorganized. She clarified. She preserved. She distinguished allegation from proof. She sought correction when the record said she provided "no reason." She warned that adverse characterization could contaminate later proceedings before those consequences became more severe.

The response culminated in a public order stating that she was trying to bury the Court in paper and that the adverse pattern had existed since the inception of the litigation.

Plaintiff should not be required to explain her humanity again. She is a woman who entered federal court after serious reported domestic violence, with autism, ADHD, PTSD, trauma, and no counsel. She continued anyway.

The question is not whether Plaintiff can endure more of the same treatment. She should not have to. The question is whether continued adjudication by a judicial officer who has already announced a case-long adverse characterization of her participation can retain the appearance of neutrality.

**XI. REASSIGNMENT IS THE NARROW REMEDY**

Plaintiff does not ask the assigned Judge to revise his opinion of her. She asks that her case proceed before a judicial officer who has not already defined the manner of her participation as a burden. Reassignment would not determine the merits, guarantee favorable rulings, or excuse procedural obligations. It would restore the appearance that future decisions concerning

discovery, compliance, access, evidentiary matters, amendment, sanctions, and dispositive motions begin from neutral ground.

If recusal is denied, Plaintiff will preserve that ruling and pursue every lawful avenue of review and administrative oversight available to her. That is not a threat. It is notice that she will continue protecting her rights through procedures established by law.

**CONCLUSION**

Document 52 asks the reader to see Plaintiff as the problem. The full docket presents a different question: whether the Court's settled view of Plaintiff has itself become the problem.

Plaintiff did not enter federal court asking to be tolerated. She entered because she believed the law applied to her. She still does.

Section 455(a) does not require Plaintiff to prove personal animus. It requires a process that still appears neutral. On this record, Plaintiff submits that this one no longer does.

For the foregoing reasons, Plaintiff respectfully requests that the assigned District Judge disqualify himself pursuant to 28 U.S.C. § 455(a) and that this matter be reassigned under neutral procedures. Enough has occurred to require a different judicial officer.

**VERIFICATION UNDER 28 U.S.C. § 1746**

I, Brigitte Keene, have read the foregoing Verified Motion. I declare under penalty of perjury that the factual statements based on my personal knowledge are true and correct; that statements describing the court record are stated accurately to the best of my knowledge and belief; and that statements expressly identified as my beliefs, perceptions, allegations, or contentions are genuinely and presently held by me. Legal arguments, authorities, and requested relief are submitted as legal argument and are not represented as independently adjudicated facts.

I further declare under penalty of perjury that I stand by the factual allegations and expressly stated beliefs in this Motion, including my allegation that the cumulative treatment described herein is discriminatory, abusive, exclusionary, and bullying in effect; my belief that the sanctions warning is abusive and chilling on this record; and my belief that continued adjudication under the present circumstances impairs the appearance of fair and neutral process.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 10, 2026.

/s/ Brigitte Keene

Brigitte Keene

Plaintiff, pro se